[Cite as *State v. Ervin*, 2021-Ohio-47.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 20CA02 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| MARCUS A. ERVIN, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellee. | : | |

_____
APPEARANCES:

James K. Stanley, Meigs County Prosecuting Attorney, Pomeroy, Ohio, for Appellant.

Steven H. Eckstein, Washington Court House, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, State of Ohio, appeals the trial court's grant of Appellee, Marcus A. Ervin's, motion to dismiss based upon speedy trial grounds. In its sole assignment of error, the State contends that the trial court erred in granting Ervin's motion to dismiss. Because we have found the State's sole assignment of error is meritorious, we reverse the judgment of trial court and remand this matter for further proceedings consistent with this opinion.

FACTS

{¶2} On February 15, 2018, Appellee, Marcus Ervin, was indicted on one count of failure to comply with an order or signal of a police officer, a third-degree felony in violation of R.C. 2921.331(B) & (C)(5)(a)(ii). Ervin failed to appear at his scheduled arraignment hearing on March 6, 2018, and an arrest warrant was issued. Thereafter the trial court filed an entry on May 10, 2018, continuing the case "off the docket until such time as the Sheriff serves the warrant and brings the Defendant before the Court." Ervin was apparently incarcerated at some point after this offense. While incarcerated on another conviction, Ervin delivered to the prison warden an "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints" in accordance with R.C. 2941.401. The notice and request demanded Ervin be brought to trial on the failure to comply charge within 180 days. It appears from the record that two copies of the notice and request were delivered to the county prosecutor's office on January 11, 2019, rather than one copy going to the prosecutor's office and one copy going to the clerk of courts. It also appears from the record that someone from the prosecutor's office signed for and received both copies, and then misfiled them. As such, neither the prosecutor nor the court were aware of the notice and request for disposition.

{¶3} The record indicates that Ervin was conveyed from prison to the court and he was finally arraigned on the charge at issue on February 11, 2019. Ervin pleaded not guilty and the matter was scheduled for an initial pretrial conference on February 25, 2019, a final pretrial conference on March 25, 2019, and a jury trial on April 9, 2019. Ervin filed a demand for discovery and a request for a bill of particulars on February 14, 2019. A motion hearing was apparently also scheduled to take place on March 11, 2019, but it appears the hearing did not actually take place. An entry filed by the court on March 13, 2019, stated "Continue motions hearing the defendant is incarcerated and did not appear due to agreement of the court. State to comply with discovery request by filing discovery today 3/11/19." The State filed its response to discovery on March 11, 2019. If a bill of particulars was filed along with discovery, it does not appear in the record.

{¶4} The final pretrial hearing was held on March 25, 2019, and Ervin was also arraigned on a new charge with a different case number.[1] After Ervin entered a not guilty plea on the new charge, his counsel explained to the court that he had just received discovery and in light of the new indictment he asked the court to vacate the April 9, 2019 trial date and convert it to another final pretrial hearing. Counsel stated that vacating the jury trial date would give he and his client "a little

---

[1] The hearing transcript indicates the new charge was "a drug case * * * out of the same incident for the * * * failure to comply."

more time." The trial court granted the request for a continuance and verbally

converted the April 9, 2019 jury trial date to another final pretrial hearing in the

failure to comply case, and also scheduled an initial pretrial hearing on that date in

the new case. A new trial date was not selected at that time. The trial court filed

an entry on March 25, 2019, stating the pretrial hearing scheduled for March 25,

2019, was being continued to April 15, 2019, that the jury trial date was vacated,

and that speedy trial was tolled during the period of this continuance, the reason

being "defendant's motion to continue jury trial date[.]"[2]

{¶5} Apparently, the scheduled April 15, 2019 final pretrial was not held.

The trial court filed an entry on April 16, 2019, stating the pretrial hearing was

being continued to June 3, 2019, and scheduling the jury trial on June 25, 2019.

The entry further scheduled a status conference on May 20, 2019, and noted as

follows: "State previously provided an offer to the defendant which is being

considered by the defendant[.] Defendant not present due to not being transported

to the court." The trial court filed another entry on May 21, 2019, stating "no

motions pending for motions date defendant not brought back prison other dates

remain the same[.]"

---

[2] Although it is unclear, the trial court likely intended to state that the April 9, 2019, pretrial hearing was being continued to April 15, 2019, as a pretrial hearing was actually conducted on March 25, 2019, and Ervin was present.

{¶6} A final pretrial hearing was held on June 3, 2019, and Ervin was again transported from prison and was present. Defense counsel requested another continuance of the June 25, 2019 jury trial, explaining that his client was reviewing discovery, that they were in the midst of negotiations with the State, and that there had been a transportation issue and his client had not been present at the last scheduled hearing. The State did not object and the court agreed to continue the jury trial to July 30, 2019, and also scheduled another "final" pretrial hearing on July 1, 2019.

{¶7} The next "final" pretrial hearing was held on July 1, 2019, and Ervin was present. Defense counsel requested another continuance of the jury trial, citing the fact that July 30, 2019, was the first day of his scheduled vacation. A trial date of August 8, 2019, was offered but defense counsel stated that was soon after he returned from vacation. August 29, 2019, was thereafter agreed upon by the parties and the court subsequently issued an entry noting the new jury trial date and tolling speedy trial time due to "Defendant's request for continuance." On August 28, 2019, the State filed a written motion to continue the jury trial because the State's witness from the laboratory would not be available to testify.[3] The

---

[3] It is unclear why the State needed someone from a lab to testify in a failure to comply case, unless there was an off the record plan discussed to try the new case at the same time as the failure to comply case.

motion was granted and the trial court issued an entry on September 3, 2019, continuing the jury trial from August 29, 2019, to November 7, 2019.

{¶8} However, on November 7, 2019, the date of the scheduled trial, Ervin filed a motion to dismiss for lack of speedy trial. His motion requested dismissal with prejudice of the pending charge, pursuant to R.C. 2945.71-73 and R.C. 2941.401. The motion specifically alleged the prosecution had failed to commence trial within the statutory time period of 180 days, as required by R.C. 2941.401. The memorandum in support of the motion referenced Ervin's service of a written notice of his place of imprisonment and request for final disposition that was served on January 11, 2019. It was not until the motion to dismiss was filed that the prosecutor and the court became aware of the notice and request that was previously delivered but misfiled. The court continued the jury trial to December 17, 2019, to permit the State to respond to Ervin's motion. The State subsequently filed a memorandum in opposition to the motion to dismiss on November 18, 2019, arguing that only 119 speedy trial days had passed.

{¶9} Thereafter, on December 16, 2019, the trial court issued an entry dismissing the case, with prejudice, for failure to bring Ervin to trial within the 180-day time limit required by R.C. 2941.401. The entry contained no findings of fact in support of the court's decision. The State filed a motion for findings of fact and reasons for the dismissal on December 20, 2019. In response, the trial court

filed its findings for dismissal on January 14, 2020, which ultimately determined that 205 days had passed for purposes of speedy trial. The State then filed its timely appeal, setting forth a single assignment of error for our review.

## ASSIGNMENT OF ERROR

I.    "THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED DEFENDANT'S MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL."

{¶10} In its sole assignment of error, the State contends the trial court erred in granting Ervin's motion to dismiss based upon speedy trial grounds. The State argues the trial court erred in its overall calculation of speedy trial days and it also argues that the trial court erred in its determination regarding several tolling events. The State concedes that the 180-day speedy trial limit contained in R.C. 2941.401 applies despite Ervin's failure to actually serve a copy of his notice and request for disposition on the trial court, but the State contends that only 119 days of speedy trial time had passed at the time Ervin filed his motion to dismiss. Ervin, on the other hand, concedes that the trial court's calculation of 205 speedy trial days was incorrect, but he contends that 195 speedy trial days passed, requiring dismissal of the charge against him.

## Standard of Review

{¶11} A review of the record below indicates Ervin filed a motion to dismiss based upon statutory speedy trial grounds on November 7, 2019, the day of his

scheduled trial. The motion was subsequently granted by the trial court on December 16, 2019. Appellate review of a trial court's decision on a motion to dismiss for a violation of speedy trial requirements presents a mixed question of law and fact. *State v. James*, 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, ¶ 23; *State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (4th Dist. 1998). Thus, appellate courts will defer to a trial court's findings of fact as long as competent, credible evidence supports them. *Brown* at 391. Appellate courts then independently determine whether the trial court properly applied the law to the facts. *Id.* "Furthermore, when reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state." *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶12} Here, the trial court initially issued a judgment entry simply granting the motion to dismiss, without including any findings of facts. However, in response to the State's subsequent, written request for findings of fact, the trial court issued a three-page document titled "Findings for Dismissal." The trial court's findings included an analysis of elapsed speedy trial days, taking into consideration several tolling events which extended speedy trial time. The trial court ultimately concluded 205 speedy trial days had elapsed, which exceeded the 180-day limit contained in R.C. 2941.401. The State now argues on appeal that the

trial court erred in its analysis of the speedy trial time which elapsed and thus erred in granting Ervin's motion.

Legal Analysis

{¶13} The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial in all criminal prosecutions. That guarantee is applicable to the states through the Fourteenth Amendment Due Process Clause. *Klopfer v. North Carolina*, 386 U.S. 213, 222-223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Similar protection is afforded under Section 10, Article I of the Ohio Constitution. *See State v. Meeker*, 26 Ohio St.2d 9, 268 N.E.2d 589 (1971), paragraph one of the syllabus ("The provisions of Section 10, Article I of the Ohio Constitution and of the Sixth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, guarantee to a defendant in a criminal case the right to a speedy trial."). Furthermore, Ohio law also includes a statutory speedy-trial right. *See* R.C. 2945.71 et seq. However, the statutory and constitutional rights are separate and distinct from one another. *State v. Hilyard*, 4th Dist. Vinton No. 05CA598, 2005-Ohio-4957, ¶ 7.

{¶14} R.C. 2945.71(C)(2) provides that a criminal defendant charged with a felony shall be brought to trial within 270 days of his arrest. However, when a defendant is incarcerated on other charges, as Appellant was in this case, R.C. 2941.401 prevails over the general speedy trial statutes of R.C. 2945.71 et seq.,

governing the time within which the defendant must be brought to trial. *State v. Cox*, 4th Dist. Jackson No. 01CA10, 2002-Ohio-2382, ¶ 17, citing *State v. Davis*, 4th Dist. Ross No. 96CA2181, 1997 WL 305217 (June 4, 1997), citing *State v. Hill*, 4th Dist. Meigs No. 96CA4, 1996 WL 754250 (Dec. 30, 1996); *see also State v. Pesci*, 11th Dist. Lake No. 2001-L-026, 2002-Ohio-7131, ¶ 41. As set forth above, Ervin moved for dismissal of this case based upon statutory speedy trial grounds, not constitutional grounds. As such, this case involves the interpretation of a statute, which we review de novo, without deference to the trial court's determination. *In re Adoption of T.G.B.*, 4th Dist. Adams Nos. 11CA919, 11CA920, 2011-Ohio-6772, ¶ 4.

{¶15} " 'The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. * * * The court must first look to the plain language of the statute itself to determine the legislative intent.' " *Id.*, quoting *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. If the meaning of a statute is unambiguous and definite, we must apply it as written and without further interpretation. *Mathews v. Waverly*, 4th Dist. Pike No. 08CA787, 2010-Ohio-347, ¶ 23. Only if a statute is unclear and ambiguous may we interpret it to determine the legislature's intent. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16. Further, because the Supreme Court of Ohio has held that R.C. 2941.401 is not ambiguous, we need not interpret

it; we must simply apply it. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 13, 20; *State v. Miller*, 4th Dist. Athens No. 11CA26, 2012-Ohio-1823, ¶ 7. "Furthermore, when reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state." *State v. Fisher*, 4th Dist. Ross No. 11CA3292, 2012-Ohio-6144, ¶ 8; s*ee also State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (4th Dist. 1998).

{¶16} R.C. 2941.401 governs the time within which the state must bring an incarcerated defendant to trial and provides as follows:

> "When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

> The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.

The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

Escape from custody by the prisoner, subsequent to his execution of the request for final disposition, voids the request. If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice. * * *."

{¶17} In *State v. Hairston*, *supra*, at ¶ 20, the Supreme Court of Ohio held that "R.C. 2941.401 places the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition [.]" The Court further held that "the statute imposes no duty on the state until such time as the incarcerated defendant provides the statutory notice." *Id*.

{¶18} To summarize, we explained in *State v. James*, *supra*, at ¶ 25 as follows:

"In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 25. The statute thus "requires a warden or prison superintendent to notify a prisoner 'in writing of the source and contents of any untried indictment' and of his right 'to make a request for final disposition thereof.' " *State v. Dillon*,

114 Ohio St.3d 154, 2007-Ohio-3617, 870 N.E.2d 1149, syllabus.

{¶19} Here, it appears that despite complying with the requirements of R.C. 2941.401 on his end, the court's copy of the notice and request for disposition was delivered to the prosecutor's office instead of the clerk's office, where it was misfiled along with the prosecutor's copy. The State concedes R.C. 2941.401 applies in spite of the service error and does not raise any argument on appeal regarding the failure of service upon the court. Further, it appears as though service errors such as this are generally not imputed to a defendant where the record indicates the defendant otherwise complied with the statutory requirements. *See State v. Gill*, 8th Dist. Cuyahoga No. 82742, 2004-Ohio-1245, ¶ 17; *State v. Adams*, 2015-Ohio-4720, 49 N.E.3d 814, ¶ 13, fn 1.

{¶20} Further, R.C. 2945.72 provides that the time within which an accused charged with a felony must be brought to trial may be extended by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C)   Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D)   Any period of delay occasioned by the neglect or improper act of the accused;

(E)   *Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;*

(F)   Any period of delay necessitated by a removal or change of venue pursuant to law;

(G)   Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H)   *The period of any continuance granted on the accused's own motion*, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I)   Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending. (Emphasis added).

Importantly, this Court explained in *State v. James*, *supra*, as follows:

"The tolling provisions of R.C. 2945.72 apply to the 180-day speedy trial time limit of R.C. 2941.401." *State v. Taylor*, 7th Dist. Columbiana No. 08CO36, 2011-Ohio-1001, ¶ 15, citing *State v. Skorvanek*, 9th Dist. Lorain No. 08CA009400, 2010-Ohio-1079; *State v. Shepherd*, 11th Dist. Ashtabula No. 2003-A-0028, 2006-Ohio-4315; *State v. Ray*, 2nd Dist. Greene No. 2004-CA-64, 2005-Ohio-2771; *State v. Nero*, 4th Dist. Athens No. 1392 (Apr. 4, 1990). In *Nero*, we discussed whether the tolling provisions contained in R.C. 2945.72 apply to R.C. 2941.401 and explained:

"R.C. 2945.71 does not specifically state that the tolling provisions therein are applicable to R.C. 2941.401. However, R.C. 2941.401 states, in pertinent part, 'except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance.' The General Assembly, in enacting R.C. 2945.72, has legislated what are reasonable continuances. We therefore conclude that the factors set forth in R.C. 2945.72 are applicable to R.C. 2941.401."

*State v. James* at ¶ 20, citing *State v. Nero* at ¶ 1; *accord State v. Curry*, 4th Dist. Scioto No. 95CA2339, 1997 WL 600056 (Sept. 30, 1997).

{¶21} As set forth above, R.C. 2945.92(E) provides that the time within which an accused must be brought to trial is extended by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" Further, R.C. 2945.72(H) provides that the time within which an accused must be brought to trial is extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" Additionally, as we have explained, R.C. 2945.72 applies to cases that must be tried in accordance with the R.C. 2941.401 180-day speedy trial limit.

{¶22} In the case at bar, we begin counting the 180-day time period on January 11, 2019, which both parties agree started the speedy trial clock running. One hundred eighty days from that date would have been July 10, 2019; however, Ervin was not brought to the court for a jury trial until November 7, 2019, which

was 120 days beyond the speedy trial limit. As such, Ervin established a prima facie case for dismissal due to a R.C. 2941.401 speedy trial violation. "Once a defendant establishes a prima facie case for dismissal, the burden shifts to the state to prove that the time was sufficiently tolled to extend the period." *State v. Smith*, 4th Dist. Lawrence No. 16CA10, 2017-Ohio-7864, ¶ 21, citing *State v. Squillace*, 10th Dist. Franklin No. 15AP-958, 2016-Ohio-1038, ¶ 14 and *State v. Anderson*, 4th Dist. Scioto No. 15CA3696, 2016-Ohio-7252, ¶ 19.

{¶23} As noted by the State, the trial court granted several continuances, most of which were requested by Ervin. The trial court determined 205 days had elapsed for purposes of speedy trial. Both parties agree, however, that the trial court miscalculated the days in its findings for dismissal. Instead, the parties agree that the days counted by the trial court, minus certain tolling events, actually added up to 195 days, not 205 days.[4] That is where the agreement between the parties ends. The State contends on appeal that only 119 speedy trials passed, while Ervin contends 195 speedy trial days passed.

{¶24} We begin with a review of the speedy trial time as determined by the trial court. In its findings for dismissal, the trial court summarized the speedy trial time that had elapsed as follows:

---

[4] The error in the trial court's calculation relates to the court's calculation of speedy trial days between April 16, 2019 and July 1, 2019, which the trial court calculated as 86 days rather than 76 days because the trial court mistakenly used the end date of July 11th instead of July 1st.

1/11/19 to 2/14/19 = 34 days

3/11/19 to 3/25/19 = 14 days

4/16/19 to 7/11/19 = 86 days

8/28/19 to 11/7/19 = 71 days

Total speedy trail [sic] days = 205

More specifically, the trial court determined the speedy trial clock began to run on January 11, 2019, and continued to run until February 14, 2019, when Ervin filed a demand for discovery and a request for a bill of particulars. At this point, the trial court determined 34 speedy trial days had elapsed. We agree with this determination. The court further found the speedy trial clock started to run again on March 11, 2019, when the State complied with discovery.

{¶25} As noted above, although the record indicates the State complied with discovery on March 11, 2019, there is nothing in the record that demonstrates the State ever filed the requested bill of particulars. Likewise, there is nothing in the record that demonstrates Ervin ever complied with the State's reciprocal discovery request. In addressing a speedy trial argument, the Supreme Court of Ohio, in *State v. Palmer*, held that "[t]he failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of the speedy-trial time pursuant to R.C. 2945.72(D)." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph

one of the syllabus. Although the State did not pursue the court to compel Ervin to respond to discovery, the *Palmer* Court also held that "[t]he tolling of statutory speedy-trial time based on a defendant's neglect in failing to respond within a reasonable time to a prosecution request for discovery is not dependent upon the filing of a motion to compel discovery by the prosecution." *Id.* at paragraph two of the syllabus, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987). However, the *Palmer* Court also held that "[a] trial court shall determine the date by which a defendant should reasonably have responded to a reciprocal discovery request based on the totality of facts and circumstances of the case, including the time established for response by local rule, if applicable." *Palmer* at paragraph three of the syllabus. Here, Ervin did not challenge the State's failure to provide a bill of particulars and the State did not pursue Ervin's failure to comply with discovery. Moreover, the trial court did not address it, nor did it establish any compliance deadlines. Considering that both parties failed to comply in this regard and that this noncompliance did not appear to factor into the court's speedy trial calculation, we choose not to delve into an analysis of any additional days that may have either passed or tolled as a result of these mutual failures in complying with discovery.

{¶26} Moving ahead, and still focusing on the date of March 11, 2019, the court also noted that Ervin was not transported to the scheduled hearing on March

11, 2019. The court determined that the speedy trial clock began to run again on March 11, 2019, and ran until March 25, 2019, when Ervin requested a continuance of the jury trial scheduled for April 9, 2019. At this point, the trial court determined a total of 48 speedy trial days had elapsed. We also agree with this determination.

{¶27} The trial court noted in its findings that Ervin's March 25, 2019 request for a continuance of the April 9, 2019 jury trial only tolled the time until his next hearing, which was April 16, 2019, because Ervin was not transported to the hearing as ordered. The trial court found the speedy trial clock began to run again on this date because Ervin failed to appear through no fault of his own. Thus, the court determined that the speedy trial clock began to run again on April 16, 2019, and continued to run until July 1, 2019, when he was brought before the court and requested a continuance of his July 30, 2019 jury trial, which was rescheduled to August 29, 2019. The court found 86 days[5] of speedy trial time elapsed between April 16, 2019, and July 1, 2019, for a total of 134 speedy trial days at that point. We disagree with these determinations.

{¶28} Next, the court found speedy trial time was tolled beginning July 1, 2019, until the rescheduled date of the jury trial on August 29, 2019. We agree with this determination. Finally, the court found that the speedy trial clock began

---

[5] As noted above, the trial court miscalculated the days, which actually totaled 76 days.

to run again on August 29, 2019, when the State requested a continuance of the jury trial, and began to run until November 7, 2019, when Ervin filed a motion to dismiss based upon speedy trial grounds. The court found another 71 speedy trial days elapsed between August 29, 2019, and November 7, 2019, for a total of 205 speedy trial days, which actually should have been 195 speedy trial days, as explained above.

{¶29} We disagree with the trial court's determinations regarding the time period between March 25, 2019, and July 1, 2019. We conclude the trial court correctly found that speedy trial time was tolled beginning on March 25, 2019, due to Ervin's request for a continuance of the April 9, 2019 jury trial. However, we conclude the trial court mistakenly determined the speedy trial clock started running again when Ervin failed to be transported from prison to attend the April 16, 2019 hearing. The trial court correctly determined in its March 25, 2019 entry that speedy trial was tolled beginning on that date due to Ervin's motion to continue the April 9, 2019 jury trial. Speedy trial time should have been tolled at that point until June 25, 2019, which was the rescheduled date of the jury trial. *See State v. James*, *supra*, at ¶ 5, 30. Further, in *State v. Smith*, this Court opined as follows:

> Where a trial court must reschedule a trial because of a motion
> of the accused, regardless of whether it is styled as a motion for
> a continuance, the entire time between the motion and the
> rescheduled trial date is a delay attributable to a motion filed by

the accused under R.C. 2945.72(E). *State v. Phillips*, 4th Dist. Highland No. 09CA13, 2009-Ohio-7069, ¶ 25. Smith's reliance on *State v. Bailey*, 4th Dist. Ross No. 14CA3461, 2015-Ohio-5483, ¶ 32, to claim that the speedy-trial period started again after the trial court appointed new counsel for him on December 7, is misplaced because the appointment of new counsel in that case did not necessitate the rescheduling of the trial date.

*State v. Smith*, *supra*, at ¶ 29.

{¶30} Thus, *Smith* unequivocally stated that the entire time between the motion of an accused which necessitates the rescheduling of a trial date and the new trial date is tolled for purposes of speedy trial.

{¶31} This Court reexamined the issue of tolling of speedy trial in response to a defendant's request to continue a jury trial in *State v. Brooks*, 2018-Ohio-2210, 114 N.E.3d 220. In *Brooks*, this Court determined the entire period between an original trial date and the rescheduled trial date was not always tolled, despite the reasoning set forth in *Smith*. *Brooks* at ¶ 36. In *Brooks*, we reviewed the holding in *Smith* and noted that the entire period of time was tolled in *Smith*, in part, because it was determined that the continuance of the trial date was reasonable in both purpose and length, and also because Smith stated he did not care how long the continuance was as long as his new counsel had time to prepare for trial. *Id.* In *Brooks*, this Court ultimately determined that the length of the continuance at issue was not reasonable because it was not completely clear that the rescheduled trial

date was the first date the court had available, and where the court had sua sponte reschedule the trial date and Brooks had not acquiesced in the continuance.

{¶32} We find the facts before us align more with *Smith* than with *Brooks*. Here, Ervin clearly requested a continuance of the April 9, 2019 trial date in order to have more time to prepare for trial. When the trial court issued the entry setting a new trial date on June 25, 2019, Ervin did not object. Instead, he went on to ask for a continuance of the June 25, 2019 trial date on June 3rd and a continuance of the July 30th trial date on July 1st. Moreover, we conclude that the trial court's rescheduling of the April 9, 2019 trial date to June 25, 2019, was per se reasonable, despite the fact that during that time period Ervin failed to be transported to an intervening hearing on April 15th. " '[T]he Supreme Court of Ohio has suggested that, in addition to the facts and circumstances of the case, courts should consider the time limits imposed by court rules in determining how long to toll the speedy trial period.' " *State v. Carr*, 4th Dist. Ross No. 12CA3358, 2013-Ohio-5312, ¶ 26, quoting *State v. Staffin*, 4th Dist. Ross No. 07CA2967, 2008-Ohio-338, at ¶ 18, in turn citing *State v. Palmer*, *supra*, at ¶ 24. Furthermore, " '[t]his Court and others have suggested that the 120-day period prescribed in Sup.R. 40 for ruling on a motion "serves as an indication of what a reasonable amount of time would be in a typical case." ' " *Carr* at ¶ 26, quoting *Staffin* at ¶ 18, in turn quoting *State v. Keaton*, 4th Dist. Pickaway No. 95CA15, 1996 WL 271704, *2 (May 16, 1996).

{¶33} Thus, going back to the trial court's tolling determinations in the case presently before us, we conclude the fact that Ervin was not transported to the April 16, 2019 hearing was of no consequence, as it occurred during the course of an overarching tolling event, and this intervening event should not have started the speedy trial clock. Instead, the speedy trial clock was tolled beginning on March 25, 2019, when Ervin requested a continuance of the April 9, 2019 jury trial date and it continued to be tolled until June 25, 2019, which was the rescheduled date of the jury trial. Prior to the scheduled June 25, 2019 jury trial, another final pretrial hearing was held on June 3, 2019. At that time, Ervin requested that the June 25, 2019 jury trial be continued as well, citing the need for further time to review discovery and continue plea negotiations. In support of his request for the continuance, defense counsel noted that Ervin was not transported and thus did not attend a status conference that was held on May 20, 2019.

{¶34} The State stated it had no objection to the continuance in light of the fact that Ervin had not been at the prior hearing. Thus, the trial court continued the jury trial to July 30, 2019. If any time period should have counted against the State for purposes of speedy trial it should have been the period of this continuance, which was granted, in part, due to the State's failure to transport Ervin to court for a scheduled hearing. Thus, the speedy trial clock would have started to run again on June 25th. However, it stopped running on July 1, 2019, when Ervin requested

a continuance of the July 30, 2019 jury trial due to the fact that defense counsel was scheduled to be on vacation. As such, time began to be tolled again July 1, 2019, due to Ervin's request for a continuance and continued to be tolled until August 29, 2019, which was the date upon which the trial was rescheduled. Finally, the speedy trial clock began to run again on August 29, 2019, due to the State's request for a continuance and began to run until Ervin filed his motion to dismiss on November 7, 2019.

¶35} In summary, considering the above dates and tolling events, we believe the following is a correct reflection of the speedy trial dates and tolling periods:

- 1/12/19 (clock starts) – 2/14/19 (discovery requested) = 34 days

- 2/14/19 time tolled until 3/11/19 (discovery provided)

- 3/11/19 (clock starts) until 3/25/19 (jury trial continuance requested) = 14 days

- 3/25/19 time tolled until 6/25/19 (rescheduled jury trial date)

- 6/25/19 (clock starts) – 7/1/19 (jury trial continuance requested) = 6 days[6]

- 7/1/19 time tolled until 8/29/19 (rescheduled jury trial date)

_____

[6] We conclude the speedy trial clock started running again on 6/25/19 and ran until 7/1/19 in light of Ervin's prior motion to continue the 6/25/19 jury trial based, in part, upon the State's failure to transport him to a prior hearing. Thereafter, the clock would have continued to run until the 7/30/19, which was the rescheduled jury trial date; however, on July 1, 2019, Ervin requested a continuance of the 7/30/19 jury trial date because defense counsel was scheduled to be gone on vacation at that time. Thus, the 7/1/19 request for continuance tolled the speedy trial clock until the 8/29/19 rescheduled jury trial. Further, it appears the State omitted these 6 days in its 119-day speedy trial calculation.

•8/29/19 (clock starts due to State's request for a continuance of the jury trial) until 11/7/19 (motion to dismiss filed) = 59 days[7]

•Total speedy trial days elapsed: 113 days

Thus, only 113 speedy trial days had elapsed at the time Ervin filed his motion to dismiss, which was well below the 180-day limit contained in R.C. 2941.401.

{¶36} Therefore, we conclude the State's sole assignment of error has merit and that the trial court erred in granting Ervin's motion to dismiss based upon speedy trial grounds. Thus, the assignment of error is sustained. Accordingly, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

**JUDGMENT REVERSED.**

---

[7] As already explained, time was tolled until 8/29/19 due to Ervin's request for a continuance of the jury trial. The State filed a request for a continuance of that jury trial date on 8/28/19. Although the clock normally would have started running the day after the State's request, because time was already tolled until 8/29/19, we conclude the speedy trial clock started running again on 8/29/19.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and costs be assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.


For the Court,


_____
Jason P. Smith
Presiding Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**