[Cite as *State v. Adkins*, 2024-Ohio-5754.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

State of Ohio,                          :        Case No.   23CA31

    Plaintiff-Appellee,            :

                             :        <u>DECISION AND</u>
v.                                      :        <u>JUDGMENT ENTRY</u>

Aaron C. Adkins,                        :        **RELEASED 12/04/2024**

    Defendant-Appellant.           :

_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Jenna J. Waldo, Lawrence County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____

Hess, J.

{¶1}   Aaron C. Adkins appeals from a judgment of conviction of the Lawrence County Court of Common Pleas, following a jury trial, of one count of aggravated arson. Adkins contends that the trial court erred in denying his motion to dismiss for a violation of his statutory speedy trial rights. He also contends that the trial court erred when it denied his motion for an acquittal because the State failed to show he acted purposely.

{¶2}   We find that his trial began before the statutory speedy trial deadline, as adjusted for all proper tolling events. We also find that the State presented sufficient evidence that he acted "knowingly" for purposes of his aggravated arson conviction when he doused the house with gasoline and threw lit matches at his sister as she stood in the gasoline-soaked area of the first floor.  We overrule his assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶3} Adkins was arrested on January 17, 2023 and indicted on February 27, 2023 on one count of attempted murder under R.C. 2903.02(A) and R.C. 2923.02(A), a first-degree felony; one count of aggravated arson in violation of R.C. 2909.02(A)(1), a first-degree felony; and one count of aggravated arson in violation of R.C. 2909.02(A)(2), a second-degree felony. On March 3, 2023, his attorney filed a motion to evaluate Adkins's competency to stand trial and Adkins entered a not guilty plea by reason of insanity. On March 15, 2023, the trial court ordered Adkins to be mentally evaluated and for the evaluator to submit a written report within 30 days. The trial court also entered a transport order for the Lawrence County Sheriff's Department to transport Adkins to the evaluation on March 28, 2023. On April 6, 2023, the trial court entered another order for Adkins's mental evaluation. According to the trial court's order, two attempts to evaluate Adkins had been made in March 2023, but each time Adkins refused to cooperate. Therefore, the trial court ordered Adkins be transported to inpatient facilities for an evaluation as soon as a bed was available. Adkins was evaluated on the third attempt, a report submitted to the trial court, and the trial court set a full competency hearing for July 12, 2023. At the competency hearing, Adkins withdrew the motion for competency. Because of a breakdown in communications, the trial court appointed new trial counsel for Adkins at the competency hearing.

{¶4} On August 9, 2023, Adkins filed a motion to dismiss his case on the grounds that his statutory rights to a speedy trial were violated because he was not tried within 270 days after his arrest. Adkins argued that he was arrested on January 17, 2023 and his speedy trial clock started the following day on January 18, 2023. Because he was

incarcerated the entire time he awaited trial, each day that he was held in jail in lieu of bail was counted as three days. R.C. 2945.71(E).  He conceded that certain events tolled his time period: (1) his discovery requests, which were answered by the State the following day and (2) his competency evaluation. He argued that his discovery requests resulted in a one-day tolling and the competency evaluation process should have resulted in a tolling from March 3, 2023 when defense counsel filed the motion until 10 days after the second evaluation, which he claims was submitted on April 16, 2023, "and therefore, no sooner than April 27, 2023." He argued that even with the applicable tolling, he had been incarcerated 148 days of his 90 days as of August 8, 2023 (the day before he filed his motion to dismiss). The State opposed the motion and argued that the competency process tolled the time from March 3, 2023 until July 12, 2023, when defense counsel orally withdrew the request for a competency determination. The State and defense counsel agreed that from the time Adkins was arrested, until the time he requested discovery and made a motion for a competency determination, 44 days lapsed (counting 3 for each jailed day – January 17, 2023 to March 2, 2023). However, they disagreed about the effect of the multiple attempts to obtain a competency evaluation due to Adkins's failure to cooperate. The trial court found that the trial date was delayed because Adkins requested a competency evaluation. The trial court stated that it received the competency report sometime between June 28 and June 30, but Adkins's trial counsel was out of state on vacation. Therefore, the competency hearing was set for July 12, 2023. The trial court also reasoned that at the July 12, 2023 hearing, the trial court appointed new defense counsel for Adkins and granted a one-week extension of the final

pretrial date so that counsel could have the opportunity to review the documents in the case:

> Court: Would you like for me to continue it for a period of one week so you would have the opportunity to review all of the documents?
>
> Defense: Yes, Your Honor. That would be best.
>
> Court: Okay. And you understand that, Mr. Adkins? That I am going to continue your case for a period of one week so that your new counsel can become acquainted with all the documents that have been filed in this case?
>
> Defendant: Yes ma'am.

The trial court determined that the tolling provisions under R.C. 2945.72(B), (D), and (H) applied to toll the speedy trial period. The time was tolled under subsection (B) (mental incompetency provision) because Adkins requested a competency evaluation. It was tolled under subsection (D) (neglect or improper act of accused) because Adkins repeatedly refused to cooperate with the mental examiners. It was tolled under subsection (H) (period of reasonable continuance granted other than by defendant's motion) because the trial court set the trial date as soon as it was able after reasonable and diligent efforts to obtain a competency evaluation. For those reasons, the trial court denied Adkins's motion to dismiss on statutory speedy trial grounds.

{¶5} On August 17, 2023, Adkins withdrew his "not guilty by reason of insanity" plea, entered a "not guilty" plea, and the matter proceeded to jury trial.

{¶6} At trial, Heather Adkins, Aaron Adkins's sister, testified that she and her brother resided together at their family home in South Point, Ohio. She owns the home and was living in the basement and Aaron was living in the upstairs area at the time of the incident on January 17, 2023. Heather testified that she maintains a "double chamber dead bolt" lock on the door between the basement and the upstairs because she was

afraid of Aaron. Heather testified that her brother had stolen from her in the past and "I couldn't leave the house and expect to come home to how I left it." She also explained that he had "gradually progressed to him being physically threatening to me and actually making verbal threats to me." Heather testified that Aaron started living with her approximately five years ago after he came back from drug rehabilitation. She believed that when he came back from rehab "he genuinely, as far as I'm aware, he was genuinely clean. He genuinely was not doing drugs . . . ." However, things began to deteriorate. Her brother did not pick up after himself and she testified about a photograph of the living room that depicted a chaotic and cluttered area.

{¶7}    Heather testified that the day and evening of January 17, 2023, Aaron was particularly active and abusive, "it sounded like he was banging his head on the wall." She was in the basement and heard what sounded like " two very loud bangs . . . like BANG BANG . . I thought he was trying to break the door down." She went and looked up at the stairs and yelled, "What are you doing?" She did not want to have to confront him in person because she feared something bad was going to happen if she did. She decided she would wait until it sounded like Aaron had left the house before going upstairs. However, she detected a faint smell of gasoline and, as she walked to a different area of the basement, the smell of the gasoline was overpowering. She went upstairs, unlocked the door, and saw that the glass in the oven door was busted out. As she walked through the area, Aaron was standing in front of a window with a clear milk jug in his hand with gasoline dumping it all over the place. She saw puddles of gasoline visible on the floor throughout the upstairs hallway and bedroom areas. Heather testified that her brother told her, "I'm going to Food Fair to buy matches to burn the house down." After

he left, Heather locked him out of the house and called 9-1-1 to alert them. However, Aaron was only gone approximately five minutes and returned before law enforcement responded to her call.

{¶8}    When Aaron returned he demanded that Heather let him inside. When she did not, he began banging on the window with a pot from the front porch. He busted the window out and began accusing Heather of killing their mother while he started climbing through the broken window into the house. Heather also decided to video record the incident on her cell phone, which she played for law enforcement after they arrived. Her video was part of the police body cam video that was played for the jury. The video shows Heather telling Aaron not to burn the house down and her brother responding that she had killed their mother.

{¶9}    Heather testified that after she recorded a portion of the incident, her brother climbed completely through the window. She tried to physically block him and she also had two knives that she kept for self-defense that she reminded Aaron she had on her. She threw a piece of furniture at him to stop him and he started lighting matches and throwing them at her and over her head. She testified that Aaron "came forward and he pushed me, and then he kind of got into a, uh, defensive lineman-type position and just tried to plow through me, and he did. He picked up a container of liquid off the floor or sitting somewhere and he splashed it on my face. It was all over my glasses. It was on my shirt. Immediately, when he did that, I grabbed my phone, I called 9-1-1 again and I said, 'He has just thrown gasoline in my face. He . . . I think he's trying to light me on fire. Where are you?' " She testified that about the same time she made the second 9-1-1 call, she heard sirens outside. After hearing the sirens, Aaron walked out the front door and lit

another match and tossed it into the house. A piece of clothing caught fire in the living room. Heather tried to contain the fire and in the process fire "whooshed up and hit me in the face" and she singed both her eyebrows, and her hair was singed. Police were there by then and she shouted that there was a fire. A police officer rushed in with a fire extinguisher and was able to put out the fire.

{¶10} Heather testified that when she first went upstairs and her brother saw her, he told her "you better get out of here." Heather testified that she did not leave the house when Aaron left to purchase matches because Aaron slit her tires so she could not get into her car and leave. And, she had called 9-1-1 and was hoping law enforcement would get there. She wanted to delay Aaron getting into the house and having free reign to set it on fire.

{¶11} W.A. Hawthorne testified that he was employed by the South Point Police Department and responded to the call on January 17, 2023 at the Adkins house. When he arrived, he witnessed Aaron exiting through the front door of the house. Officer Hawthorne immediately arrested him. During that time, Aaron Adkins made "a spontaneous statement that Heather had killed his mother and now he was going to kill her." Officer Hawthorne testified that he took pictures of the scene and detected a strong odor of gasoline in the house. He saw matchsticks throughout the hallway and burnt clothes. There was also dry powder extinguisher that another officer had used to put out the fire. Officer Hawthorne also took photographs of Heather's injuries, which included singed hair on her forehead, eyebrows, eyelashes, and just above her ear. While Officer Hawthorne was there, the fire department came and began soaking up the liquids and venting the house with ventilation fans.

{¶12} Mark Goodall, the Fire Chief for South Point and Fayette Township, testified that he was dispatched to the Adkins house on January 17, 2023. When he arrived, police were already on the scene. Chief Goodall testified that he walked the perimeter of the house and then went inside and discovered a strong odor of gasoline in the house. There was a hallway and bedroom that were totally soaked in gasoline. When Chief Goodall arrived at the scene, the police had already extinguished a fire. Chief Goodall witnessed burnt and unburnt matches scattered about. Chief Goodall asked the State Fire Marshal to investigate.

{¶13} Jeff Hoeft, an investigator for the State Fire Marshal Fire and Explosion Bureau, testified that he investigated the fire that occurred in the Adkins house. Investigator Hoeft took photographs of the scene. He determined that there were two points at which there had been a fire: a bedroom mattress and the living room floor. He testified that there were matches laying around and that there were at least three discarded burnt matches. He ruled out an electrical fire as the source and determined that it was an incendiary fire caused by the gasoline and matches.

{¶14} Sergeant Cody Pennington testified that he was employed by the South Point Police Department. Sergeant Pennington went to Speedway and obtained security footage that showed Aaron Adkins purchasing gasoline on January 17, 2023 with a gallon jug that was retrieved from the house. Sergeant Pennington also collected security footage from Food Fair that showed Aaron Adkins purchasing matches. He also obtained purchase receipts from both transactions.

{¶15} The State moved to dismiss one of the two aggravated arson counts on the ground that there was not sufficient evidence of physical harm to an occupied structure.

The trial court granted the motion. Adkins moved for an acquittal on the remaining two counts and the trial court denied it. The jury found Adkins not guilty of attempted murder and guilty of aggravated arson. The trial court sentenced Adkins to a total prison term of 11 to 16.5 years. Adkins appealed.

## II.  ASSIGNMENTS OF ERROR

**{¶16}** Adkins presents two assignments of error:

The trial court violated appellant's right to a speedy trial.

The trial court erred when it denied appellant's motion for acquittal.

## III.  SPEEDY TRIAL ANALYSIS

**{¶17}** Adkins contends that he was not tried within the 270 days required by statute. He was incarcerated the entire period, so each day is counted as three. He argues that the total number of days that lapsed since his arrest on January 17, 2023 until he requested discovery on March 2, 2023 was 44 days. The following day the State responded to discovery, but Adkins filed a motion for a competency determination on March 3, 2023.  Adkins and the State agree that the discovery demand and his competency motion tolled the period and that as of March 3, 2023, 44 days had transpired – 132 days when multiplied by 3. However, Adkins argues that after he filed his competency motion, the statute requires a hearing on competency be held within 30 days or, if the defendant is referred for an evaluation as he was, then 10 days after the report is filed. Here, a letter was sent to the trial court on March 13, 2023 informing the court that it could not evaluate Adkins because he would not cooperate. A second attempt at an evaluation took place on March 28, 2023, but again Adkins refused to cooperate.  As a result, the trial court ordered Adkins to be placed at an inpatient facility on April 5, 2023.

Due to lack of beds, he was not transported until May 31, 2023. Thus, Adkins argues that he waited 56 days from the date of the April 5, 2023 order to be transported for an evaluation until the transport occurred on May 31, 2023. When the 56 days is added to the 44 days, the sum is 100 days. When multiplied by 3 days for each jailed day, the sum is 300 days, which exceeds the 270-day period established by statute.

{¶18}  Adkins argues that it was unreasonable for the trial court to attempt to have a professional evaluate him a third time because Adkins repeatedly indicated that he did not agree with a competency determination and would not cooperate. He contends that after the second competency evaluation report was received by the trial court on March 30, 2023, which indicated that Adkins was uncooperative, that should have ended it and the trial court should have held a competency hearing by April 10, 2023.  As a result, he argues that by the time he filed his motion to dismiss based on a statutory speedy trial violation on August 9, 2024, another 61 days transpired (May 31, 2023 to August 9, 2023). When that additional 61 days are added to the previous 100-day total that accumulated by May 31, 2023, 161 days lapsed. When multiplied by 3 days for jailed time, the sum is 483 days, which exceeds the 270-day period.

A.  Speedy Trial Requirements

{¶19}  "A defendant's right to a speedy trial arises from the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution." *State v. Myers*, 2023-Ohio-3413, ¶ 7 (4th Dist.).  " ' "In Ohio, the right to a speedy trial is implemented by statutes that impose a duty on the state to bring the defendant to trial within a specified time." ' "  *State v. Stansberry*, 2023-Ohio-3212, ¶ 11 (3d Dist.), quoting *State v. Irish*, 2019-Ohio-2765, ¶ 11 (3d Dist.), quoting *State v.*

*Melampy*, 2008-Ohio-5838, ¶ 9 (12th Dist.). "[S]peedy trial statutes must be strictly construed against the state." *Myers* at ¶ 8, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57 (1996). The prosecution and trial courts have a mandatory duty to try an accused within the statutorily prescribed time frame. *Id.* at ¶ 7, citing *State v. Singer*, 50 Ohio St.2d 103, 105, (1977). After a defendant establishes a prima facie case for dismissal, the burden shifts to the state to prove that the time was sufficiently tolled to extend the period. *State v. Brooks,* 2018-Ohio-2210, ¶ 24 (4th Dist.).

**{¶20}** Adkins must be brought to trial within 270 days after his arrest. R.C. 2945.71(C)(2). Each day that Adkins was held in jail in lieu of bail is counted as three days. R.C. 2945.71(E). Certain events toll this period under R.C. 2945.72. Three tolling provisions are relevant to this case: R.C. 2945.72(B) states, "Any period . . . during which the accused's mental competence to stand trial is being determined"; subsection (D) states, "Any period of delay occasioned by the neglect or improper act of the accused"; and subsection (H) states, "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion; . . . ."

### B. Standard of Review

**{¶21}** Appellate review of a trial court's decision on a motion to dismiss for a violation of speedy trial requirements presents a mixed question of law and fact. *State v. Ervin*, 2021-Ohio-47, ¶ 11 (4th Dist.). Thus, appellate courts will defer to a trial court's findings of fact if competent, credible evidence supports them. *State v. Brown,* 131 Ohio App.3d 387, 391 (4th Dist. 1998). Appellate courts then independently determine whether the trial court properly applied the law to the facts. *Id.* "Furthermore, when reviewing the

legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state." *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57 (1996).

### C.  Tolling for Discovery

**{¶22}** Adkins made a discovery demand on March 2, 2023 that the State responded to the following day on March 3, 2023, resulting in one tolling day. A defendant's discovery demand tolls the running of the speedy-trial period. *State v. Brown*, 2002-Ohio-7040, ¶ 23. Neither the State nor Adkins contest this.

### D. Tolling for the Competency Determination

**{¶23}**   Adkins filed a motion to determine competency on March 3, 2023. This commenced the tolling time under R.C. 2945.72(B). *State v. Palmer*, 84 Ohio St.3d 103, 105 ("the time period within which an accused must be brought to trial is tolled from the date the competency motion is filed"). The "time continues to be tolled until the court determines whether the accused is competent to stand trial." *Id.*

**{¶24}** In *Palmer, supra,* the examiner failed to comply with the statutory filing deadlines for filing the competency report with the trial court, which was required by statute to be filed within 30 days of the trial court's order for an examination.  The Supreme Court of Ohio determined that the language in R.C. 2945.72(B) "clearly provides that the speedy trial time is extended by 'any period' during which the accused's competency is being determined." *Id.* at ¶ 106. The Court found that nowhere in the relevant statutes "does it state that if a report is not filed when due, the tolling period ends and the time begins to run again for speedy trial purposes." *Id.* "Therefore, the tolling effect of R.C. 2945.72(B) cannot be cut short by an examiner's failure to file a competency report within the prescribed time frame." *Id.* at 107. The Court held that "the tolling effect of R.C.

2945.72(B) continues until the trial court makes a competency determination and does not end when a competency examiner fails to issue a report withing the time limits" imposed by statute. *Id.*

**{¶25}** Here the competency motion was filed on March 3, 2023 and the competency hearing was held on July 12, 2023. However, at the competency hearing, the defense counsel withdrew the motion for a competency determination and Adkins represented to the trial court that he wished to proceed forward without a competency determination. The trial court agreed to do so. Therefore, based upon the holding in *Palmer*, the tolling period commenced March 3, 2023 and ended July 12, 2023.

**{¶26}** Adkins argues that the trial court should not have attempted to obtain three competency evaluations, and it abused its discretion when it did so. He argues that after two attempts the trial court should have stopped and held a competency hearing based on Adkins's behavior in court. However, he cites no legal authority to support his argument. The State cites to *State v. Furman*, 2023-Ohio-3029 (11th Dist.) to support its argument that the trial court was well within its discretion to make several attempts to have Adkins examined professionally.

**{¶27}** In *Furman*, the State filed a motion for a competency evaluation on January 8, 2021. The trial court ordered an evaluation, but Furman refused to participate. A hearing was held on his refusal, following which the trial court ordered an inpatient evaluation of him. The inpatient evaluation determined that Furman was competent to stand trial. However, because Furman refused to stipulate to the report, the matter had to be set for a hearing so that the evaluating doctor could come into court to testify. After the hearing, the trial court entered an order finding Furman competent. Furman moved

for a dismissal of the charges on statutory speedy trial grounds because the evaluation of him was unnecessary and the trial court abused its discretion in ordering the two competency evaluations. The appellate court held that the speedy trial time was tolled beginning the day following the competency motion, which was January 9, 2021[1] through November 1, 2021 when the trial court found Furman competent to stand trial. *Furman* at ¶ 16-17. *See also State v. Brelo*, 2001-Ohio-4245 (8th Dist.) (time periods during which defendant underwent three different psychiatric evaluations because of his failure to cooperate with the examiners served to toll the speedy trial period); *United States v. Pina*, 724 Fed.Appx. 413, 419 (6th Cir. 2018) (analyzing the federal speedy trial statute and finding that the district court did not abuse its discretion in ordering a second competency evaluation because defendant was uncooperative during the first examination and the extra time incurred by the second evaluation was properly counted in the speedy trial tolling calculation).

**{¶28}** We find that the trial court did not abuse its discretion when it ordered Adkins to undergo three mental competency evaluations and that the time between when the competency motion was filed (March 3, 2023) and the motion was withdrawn (July 12, 2023) was properly tolled by the trial court.

**{¶29}** Additionally, we find no merit to Adkins argument that he was not at fault for creating the delay caused by the third, inpatient evaluation and that he "languished in jail for approximately 56 days awaiting transport" through no fault of his own. Under R.C. 2945.72(D), any period of delay caused by the neglect or improper act of the accused

---

[1] There appears to be a typographical error in the *Furman* decision, which refers to the date following the date the competency motion was filed as "January 9, 2020" instead of "January 9, 2021." Furman was not arrested until October 30, 2020 for crimes allegedly occurring in late October 2020, so it was not possible a motion was pending on January 9, 2020. *Furman* at ¶ 2, ¶ 12, and ¶ 17.

extends the speedy trial time. Adkins's failure to comply with the trial court's order that he undergo a competency evaluation through his refusal to cooperate with the examiner constitutes "neglect or improper act" that extends the speedy trial time. *See State v. Gibson,* 75 Ohio App.3d 388, 391, (3d Dist.1992) (delays caused by defendant's failure to appear for hearings set by the court and failure to stay in contact with his attorney or the court were properly excluded from speedy trial time); *State v. Bauer,* 61 Ohio St.2d 83, 84 (1980) (defendant "through his own design . . . chose to shun this right and impede the prompt administration of this cause" and "will not be permitted to enjoy the protection of these [speedy trial] statutes . . . when by his actions he has waived their benefits").

### E. Tolling for Trial Continuances

**{¶30}** The trial court also reasoned that there was a seven-day continuance granted to Adkins to allow his newly appointed trial counsel to review the documents in his case. The trial court spoke with defense counsel and Adkins and determined that both of them agreed to the continuance. The court continued the final pretrial from July 12, 2023 to July 19, 2023. Under R.C. 2945.72(H), this constituted a "period of reasonable continuance granted other than upon the accused on motion" and tolled the speedy trial period by seven days.

### F. Speedy Trial Calculations

**{¶31}** Adkins was arrested January 17, 2023 and spent 44 days in jail before his defense counsel filed a discovery demand on March 2, 2023 which tolled the time period for 1 day. A motion for a competency determination was filed on March 3, 2023. Therefore the time period was tolled under R.C. 2945.72(B) from March 3, 2023 through July 12, 2023. On July 12, 2023, the trial court granted a seven-day continuance through July 19,

2023 to allow his new defense counsel time to review the case file. From July 19, 2023 Adkins spent an additional 21 days in jail before his defense counsel filed a motion to dismiss on August 9, 2023, which the trial court denied on August 17, 2023, the date his trial commenced.

**{¶32}** Therefore, Adkins spent a total of 65 days in jail before trial (44 days + 21 days). When this 65-day period is multiplied by 3 for jail time days, it equals 195 days, which is less than the 270 days speedy trial limit provided by statute.

| January 17 – March 2, 2023 | 44x3= 132 days | Jail Time |
|---|---|---|
| March 2 – March 3, 2023 | Tolled | Discovery |
| March 3 – July 12, 2023 | Tolled | Competency Determination |
| July 12 – July 19, 2021 | Tolled | Continuance for Newly Appointed Counsel |
| July 19 – August 9, 2023 | 21x3=63 days | Jail Time |
| August 9 – August 17, 2023 | Tolled | Motion to Dismiss |
| TOTAL UNTOLLED DAYS | 65x3=195 days | 195 days < 270 Speedy Trial Requirement |

**{¶33}** Construing the relevant statutes against the State and based upon the factual record before the trial court, we independently find that the trial court properly applied the law to the facts when it denied Adkins's motion to dismiss for a statutory speedy trial violation. We overrule his first assignment of error.

## IV. SUFFICENCY OF THE EVIDENCE

**{¶34}** For his second assignment of error, Adkins contends that the trial court erred when it denied his Crim.R. 29 motion for an acquittal on his aggravated arson charge. He argues that the State did not present evidence that he acted knowingly, "The

state failed to prove beyond a reasonable doubt that Aaron knowingly set a fire and created a substantial risk of serious physical harm to another person."

### A. Standard of Review

**{¶35}** Under Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the sufficiency of the evidence, the same standard of review applies to Crim.R. 29 motions as is used in reviewing "the sufficiency of the evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### B. Elements and Proof of Aggravated Arson

**{¶36}** R.C. 2909.02(A)(1) prohibits aggravated arson and provides: "(A) No person, by means of fire or explosion, shall knowingly do any of the following: (1) Create a substantial risk of serious physical harm to any person other than the offender; . . . ."

**{¶37}** R.C. 2901.22(B) defines the mental state of "knowingly" for purposes of criminal culpability:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶38} Sufficient evidence supports Adkins's conviction. Adkins knowingly doused the first floor of the house, a house Heather owned and lived in, with gasoline. Heather and several of the law enforcement witnesses testified that there were pools or puddles of gasoline in various areas on the first floor. Witnesses also testified that there were burnt matches laying around the floor. Heather testified that Adkins tossed lit matches at her while she stood on the first floor amid the gasoline-doused areas. Heather and law enforcement testified that Adkins stated on several occasions that he was going to kill Heather because he believed she had killed their mother. Adkins was aware that he had doused the house with gasoline and he knew that if he tossed a lit match on the gasoline it would probably cause a house fire. Adkins told Heather she had better leave because he was going to burn the house down. He knew that Heather lived in the house and that she was in the living room and had not left the house when he began tossing lit matches at her head and face. He was aware that under such circumstances he probably would cause a substantial risk of a house fire and that Heather was inside the house and it created a serious risk of physical harm to her. When we construe this evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.

{¶39} We overrule Adkins's second assignment of error.

## V.  CONCLUSION

{¶40} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**