[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Belville*, Slip Opinion No. 2022-Ohio-3879.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3879

THE STATE OF OHIO, APPELLEE, *v.* BELVILLE, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Belville*, Slip Opinion No. 2022-Ohio-3879.]**

*Criminal law—Statutory speedy-trial right—Defendant's request for discovery operates as a tolling event pursuant to R.C. 2945.72(E) for the time the state reasonably needs to fulfill defendant's request—Trial court not required to contemporaneously identify tolling events on the record—Court of appeals' judgment affirmed.*

(No. 2021-0483—Submitted March 30, 2022—Decided November 2, 2022.)

APPEAL from the Court of Appeals for Lawrence County,

No. 19CA27, 2021-Ohio-820.

_____

DEWINE, J.

{¶ 1} Under Ohio's Speedy Trial Statute, a person accused of a felony has the right to be brought to trial within 270 days of his arrest. When the accused is

held in jail awaiting trial, each day is counted as three. The time can be paused, or tolled, if certain circumstances occur. We have long recognized that when a defendant requests discovery, time is tolled while the state responds to the request.

{¶ 2} David Belville was arrested for drug trafficking. He alleges that a total of 283 days elapsed for speedy-trial purposes before he was brought to trial, violating his statutory speedy-trial right. The state maintains that no violation occurred because much of the time was tolled while it responded to Belville's discovery request.

{¶ 3} The disagreement stems from the fact that the state did not provide discovery in one batch. Instead, the state provided Belville with most of the discovery the day after he requested it, but it took longer to copy and deliver the contents of a digital video recorder ("DVR"). Belville had used this DVR as part of a home-surveillance system. The state contends that the speedy-trial time was tolled from the time Belville made his discovery request until it provided the copy of the DVR footage; Belville says the tolling period ended when the state provided its initial response to discovery.

{¶ 4} We conclude that Belville's request for discovery operated as a tolling event for the time that the state reasonably needed to respond to the request, which—under the facts of this case—included the time needed to provide a copy of the DVR footage. That tolling event lasted for more than 13 days, meaning that Belville's time awaiting trial did not exceed 270 days, and therefore, the state did not violate his statutory speedy-trial right.

## I. Background

{¶ 5} On July 17, 2019, Belville was arrested for his involvement in drug trafficking. He was let out of jail to receive medical treatment on July 19. Police later rearrested Belville and returned him to jail on September 3, where he would remain.

### A. Belville requests discovery

{¶ 6} On September 16, Belville filed a request for discovery. The state responded the next day. It provided Belville with much of its file on the case, totaling some 1,200 pages. In response to a request for "any and all evidence * * * favorable to the Defendant and material to guilt or punishment," the state replied: "The State is in possession of evidence favorable to Defendant; State is in possession of an HD DVR that is still currently being reviewed."

{¶ 7} The DVR was connected to four cameras that monitored the inside and outside of Belville's home. It contained a hard drive on which video surveillance footage captured by the cameras was stored. According to the state, the DVR contained "months" of footage.

{¶ 8} On September 18—the day after the state provided its initial discovery response—the trial court held its first pretrial conference. At the conference, the court brought up the DVR footage that the state had referred to in its discovery response. (The court was familiar with the DVR and its contents because it was also handling several other cases involving Belville's associates in the drug operation.) Due to the large volume of footage on the DVR, the court explained that Belville's attorney had "two options." He could go to the prosecutor's office and watch the video or the state could attempt to transfer the footage to another DVR so that defense counsel could watch the "hours and hours of this footage" at his convenience. Everybody agreed that the first option was not practical. The court explained that defense counsel would "need a key to the Prosecutor's office" and defense counsel quipped, "And I'll need a cot."

{¶ 9} Thus, defense counsel decided that "the best approach would be [for the state] to, at least, attempt to * * * transfer [the footage] over if that's possible." At oral argument, counsel for the state explained that making a copy of the DVR footage was more complicated than reproducing video files using the latest technology. He noted that the state could not simply upload the data onto a

computer or an ordinary portable-storage device, such as a thumb drive. Instead, counsel explained, the state had to arrange to purchase a second DVR and then copy the first DVR's hard drive onto the hard drive of the second device.

{¶ 10} Over the five weeks that proceeded the initial pretrial conference, the court held three more status conferences. At each conference, the parties discussed with the court the state's progress in reviewing and copying the DVR footage. On October 9, the state indicated that it was still in the process of reviewing the DVR footage and determining if it was possible to make a copy that would be acceptable to defense counsel. The parties and the court also discussed, once again, the option for defense counsel to review the video in the prosecutor's office. They also considered how the defense would be able to verify that any copy was "true and accurate."

{¶ 11} On October 23, the state informed Belville and his counsel that it had been able to obtain another DVR and transfer the footage. On October 29—43 days after the initial discovery request—the state delivered a copy of the DVR to defense counsel. In addition, the state provided a copy of the notes that its investigators had taken while reviewing the video in order to "help streamline" defense counsel's review of the footage.

*B. Belville claims a speedy-trial violation and seeks dismissal*

{¶ 12} On November 19, the day before trial was set to begin, Belville moved to dismiss the case based on an alleged violation of his statutory speedy-trial right. He argued that the state was required to bring him to trial within 270 days but that he had been awaiting trial for 46 days while out on bond and 79 days while in jail (triple-counted as 237 days), for a total of 283 days—not accounting for any tolling events. He conceded that the state was entitled to toll time while it responded to discovery. However, Belville maintained that because the state filed its initial discovery response the day after he requested discovery, the time was tolled for only one day. Belville was in jail on that day, so it would have been

triple-counted; Belville thus asserted that a minimum of 280 days had elapsed for speedy-trial purposes.

{¶ 13} The state argued that the speedy-trial time had been tolled under two different theories. First, the state argued that tolling occurred for the time necessary to respond to Belville's discovery request, spanning from the time the request was made to the date the state provided the DVR copy to Belville. Additionally, the state argued that time had been tolled because Belville's request for discovery imposed a reciprocal duty on Belville to provide discovery to the state under Crim.R. 16. According to the state, Belville never fulfilled this reciprocal duty. In the state's opinion, then, time was tolled under this theory for a reasonable time, which it viewed as at least thirty days. The trial court orally denied Belville's motion, noting that it was "reasonable" for the court to ensure that the DVR footage was copied and provided to Belville. The court also pointed out that it had given defense counsel the option of reviewing the footage in the prosecutor's office. Thereafter, Belville took a plea deal under which he tendered a plea of no contest to a single felony count. He was sentenced to prison and subsequently appealed.

{¶ 14} The Fourth District Court of Appeals affirmed the trial court's denial of Belville's motion to dismiss. It concluded that the speedy-trial time had been tolled for the 43-day period between Belville's request for discovery and the state's delivery of the DVR copy. 2021-Ohio-820, ¶ 18-19. The appellate court reasoned that the 43-day delay was reasonable because the DVR footage was voluminous and difficult to transfer. *Id.* at ¶ 17. The court also noted that there was "no evidence of dilatory or bad faith action by the State" but rather, that the state "went to great lengths to provide this discovery as quickly as possible." *Id.* Due to this tolling event, the court of appeals concluded that the time for the state to bring Belville to trial had not expired. *Id.* at ¶ 19.

{¶ 15} The court further concluded that the speedy-trial time had been tolled while the state waited for Belville's reciprocal discovery. In reaching that

5

determination, the court observed that time tolls under R.C. 2945.72(D) for " '[a]ny period of delay occasioned by the neglect or improper act of the accused.' " (Emphasis deleted.) 2021-Ohio-820 at ¶ 10, quoting R.C. 2945.72(D). The court found that Belville's failure to notify the state that he had no discovery to produce was neglectful and counted as an additional tolling event. *Id.* at ¶ 27.

{¶ 16} Belville appealed to this court, and we accepted jurisdiction. 163 Ohio St.3d 1490, 2021-Ohio-2097, 169 N.E.3d 1268. He argues that the court of appeals erred in concluding that his speedy-trial time was tolled (1) while the state copied the DVR and (2) while the state waited for him to provide reciprocal discovery. Our conclusion that Belville's speedy-trial time was tolled while the state responded to his discovery request makes it unnecessary to reach the second issue.

## II. Analysis

{¶ 17} This case concerns Belville's speedy-trial right as codified in R.C. 2945.71.[1] In felony cases, the statute requires the state to bring a defendant to trial within 270 days of his arrest. R.C. 2945.71(C)(2). No one disputes that after applying the triple-count provision for the days that Belville was incarcerated, *see* R.C. 2945.71(E), Belville was entitled to credit for 283 days awaiting trial without counting tolling events. The question is how much of that time was tolled.

*A. Belville's speedy-trial time was tolled by his request for discovery*

{¶ 18} R.C. 2945.72 sets forth a number of circumstances that will toll the statutory speedy-trial time. Two are relevant in this case. First, time is tolled for

---

1. In addition to his statutory argument, Belville's propositions of law refer to the right to a speedy trial enshrined in Article 1, Section 10 of the Ohio Constitution and the Sixth Amendment to the United States Constitution. The test for a constitutional violation is different than for a statutory one. *Compare Vermont v. Brillon*, 556 U.S. 81, 89-90, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009) *with* R.C. 2945.71. But, at no point in the proceedings below or in his briefing before this court has Belville developed an argument under the applicable standard for a constitutional violation. Because Belville's argument is limited to Ohio's Speedy Trial Statute, the constitutional argument has been forfeited and will not be considered.

"[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused."  R.C. 2945.72(E). Second, time is tolled for "[a]ny period of delay occasioned by the neglect or improper act of the accused."  R.C. 2945.72(D).

{¶ 19} In *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 23, this court held that "the most sensible interpretation of R.C. 2945.72(E)" is that when a defendant requests discovery, the request operates as a tolling event. "Discovery requests," we explained, "divert the attention of prosecutors from preparing their case for trial, thus necessitating delay."  *Id*.  Further, a contrary rule would force prosecutors "to make hurried responses to discovery requests to avoid violating the speedy-trial statute."  *Id*.  We also noted that the purpose of R.C. 2945.71 was " 'to prevent inexcusable delays caused by indolence within the judicial system,' " *id.* at ¶ 24, quoting *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978), and we found nothing in *Brown* that "suggest[ed] that indolence contributed to the delay," *id*.

{¶ 20} We have never set forth a precise number of days in which the state must respond to a discovery request for purposes of tolling.  In the context of a motion in limine, we have said that "R.C. 2945.72(E) implicitly recognizes that when a motion is filed by a defendant, there is a 'period of delay necessitated'—at the very least, for a reasonable time until the motion is responded to and ruled upon."  *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 26.

{¶ 21} We see no reason why a similar standard should not apply to a defendant's discovery request.  A discovery request tolls speedy-trial time for a reasonable amount of time necessary to allow the state to respond to the request. What is reasonable will necessarily be a case-by-case determination and depend on the totality of the circumstances.  It might be influenced, for instance, by the

complexity of the discovery requested, the good or bad faith of the state, or the steps the state must take to comply with the request.

{¶ 22} We also note that when a defendant believes that the state has been dilatory in providing discovery, the best course is for the defendant to promptly bring the matter to the trial court's attention by filing a motion to compel discovery. The trial court is the tribunal in the best position to assess the underlying facts and supervise the discovery process. A motion to compel discovery affords the trial court the opportunity to determine in the first instance whether discovery is being unduly delayed and to ensure that the defendant's speedy-trial rights are protected.

*B. The state responded within a reasonable time to Belville's request*

{¶ 23} Turning to the facts of this case, there is nothing to indicate that the state failed to respond to Belville's discovery request within a reasonable time. The state provided its initial response to Belville the day after he made his discovery request. That response identified the DVR footage as responsive to Belville's request. At the hearing the next day, the parties specifically discussed the DVR footage and the most efficient manner for Belville's counsel to review the footage. At the status conferences that followed, the state continued to update the court and Belville's counsel on the steps it was taking to make the footage available to Belville. Belville's counsel never complained about the pace of the state's production, never suggested that he wished to forgo review of the footage, and never took the trial court up on its offer to watch the DVR footage at the prosecutor's office.

{¶ 24} The trial court in this case took a hands-on role in managing the discovery process and was intimately familiar with the state's efforts to make the DVR footage available to defense counsel. Although it did not issue a written opinion, the trial court's oral comments in denying Belville's motion strongly suggest that it found the state's conduct and timeliness in responding to the discovery request to be reasonable. So do we.

8

**{¶ 25}** Perhaps one could quibble that the state should have been able to produce the DVR footage in less than 43 days. But even if we were to assume that 43 days was a bit longer than necessary on these facts, we would not find a speedy-trial violation. Two hundred eighty-three days of speedy-trial time elapsed while Belville awaited trial, without accounting for tolled time. To avoid a speedy-trial violation, the state needed to establish that 13 days were tolled. Because Belville was in jail when he made his discovery request, each day was triple-counted. Thus, the state needed only to show that five of these triple-counted days were tolled.[2] Given the difficulty of copying the DVR footage, the state could not reasonably have been expected to deliver a copy of the DVR footage within the five triple-counted days that followed Belville's request.

**{¶ 26}** Tellingly, Belville does not contend that the amount of time it took the state to produce the DVR footage was unreasonable. Instead, he argues that the DVR constituted "supplemental discovery" and that the tolling for discovery ended when the state provided its initial disclosure the day after his request. Belville characterizes the DVR footage as "supplemental" because it was delivered after the state's initial batch of discovery and because Crim.R. 16(A) states that "all parties have a continuing duty to supplement their disclosures." Belville submits that it would be problematic to allow the state to toll time based on supplemental disclosures because "piecemeal discovery disclosure could affirmatively be used by the state to undermine defendants' speedy trial rights." As his argument goes, the state would be able to nullify a defendant's speedy-trial-time credits by simply filing occasional supplements to its discovery response.

---

2. The opinion concurring only in judgment says that it does not "agree with the majority's insinuation that R.C. 2945.71(E)'s triple-count provision can render the prosecution's delay more or less reasonable." Opinion concurring in judgment only, ¶ 41. We insinuate nothing of the sort; we deal in basic math. When a day is tolled, it doesn't count for speedy-trial purposes. So, if time is tolled for any of the triple-counted days when Belville was in jail, the triple-counted day doesn't count against the state for speedy-trial purposes.

**{¶ 27}** The problem with Belville's argument is that this case does not involve a supplemental disclosure. The state identified the DVR as responsive to Belville's request in its initial disclosure. And given that it was said to contain evidence favorable to Belville, the DVR easily fit within the scope of the initial discovery request. On top of that, when the parties discussed the DVR footage at the first pretrial conference, Belville's attorney specifically requested a copy.

**{¶ 28}** Nor are we persuaded by Belville's concern that in a different case the state might use piecemeal discovery in bad faith to toll a defendant's speedy-trial time. As we have said, the state has only the reasonable amount of time it needs to respond to a defendant's discovery request. If the state were to drag its feet and respond after an unreasonable amount of time, the time lost due to the undue delay would not be tolled. That "period of delay" would not be "necessitated" by the action of the defendant, R.C. 2945.72(E), but rather, it would be due to the dilatoriness of the state.

### C. The trial court did not need to make a contemporaneous finding that the speedy-trial time was tolled during discovery

**{¶ 29}** As a final matter, Belville asserts that the trial court was not permitted to make an after-the-fact determination that discovery was a tolling event. The trial court did not determine that Belville's speedy-trial time had been tolled until it made its ruling on his motion to dismiss. But nowhere in R.C. 2945.72 does it say that courts must identify tolling events as they arise. And in practice, courts routinely identify tolling events for the first time when ruling on speedy-trial motions. *See, e.g.*, *State v. Miller*, 6th Dist. Huron No. H-07-015, 2008-Ohio-379, ¶ 2-3,7; *State v. Lacy*, 46 Ohio App.2d 215, 215-216, 348 N.E.2d 381 (7th Dist.1975); *State v. Aderhold*, 9th Dist. Medina No. 07CA0047-M, 2008-Ohio-1772, ¶ 3, 5, 18. Indeed, *Brown* concerned a tolling event—the defendant's request for discovery—that was not identified until the appeal. *See Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, at ¶ 4.

**{¶ 30}** In making his argument against after-the-fact tolling determinations, Belville relies on *State v. King*, 70 Ohio St.3d 158, 162, 637 N.E.2d 903 (1994), but that case involved a different issue. Specifically, *King* dealt with the requirement that when a trial court sua sponte continues a trial date beyond the speedy-trial period, it must issue a journal entry setting forth the continuance and the reason therefor prior to the expiration of the speedy-trial period. *Id.* at 162-163. Because the trial court failed to issue a journal entry continuing the case in *King*, we held the state could not rely on the court's oral postponement of the trial date as a tolling event. *Id.*

**{¶ 31}** Nothing in *King* requires a trial court to contemporaneously identify every tolling event on the record. Moreover, the plain terms of R.C. 2945.72(E) refute Belville's position. That statute simply provides that "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused" shall constitute a tolling event. *Id*. Thus, all that the statute requires is that the delay be necessitated by the defendant's action. It does not impose a requirement that a trial court contemporaneously announce that a tolling event is taking place.

### III. Conclusion

**{¶ 32}** The state did not violate Belville's speedy-trial rights. Belville's request for discovery operated as a tolling event for the time that the state reasonably needed to fulfill his request, and that included the time that it took to provide Belville with a copy of the DVR. Because this resolves the case, we do not address whether Belville's failure to provide reciprocal discovery also operated as a tolling event. We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DONNELLY, and BRUNNER, JJ., concur.

STEWART, J., concurs in judgment only, with an opinion.

———————————

**STEWART, J., concurring in judgment only.**

{¶ 33} The court's decision in this case depends entirely on the court's holding in *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 23, that a defendant's discovery request tolls the time in which a defendant must be brought to trial under Ohio's Speedy Trial Statute, R.C. 2945.71 through 2945.73. Although I agree that *Brown* is the relevant authority to be applied in this case, I question whether *Brown* was correctly decided and whether its holding needs to be revisited. Additionally, I disagree with the majority's use of the Speedy Trial Statute's triple-count provision to minimize the length of the state's delay in turning over discovery. For these reasons, I concur in judgment only.

### This court's decision in *Brown*

{¶ 34} Nothing in R.C. 2945.71 through 2945.73 explicitly states that speedy-trial time tolls between the time that a defendant requests discovery and when the state responds to that request. This concept, first announced in *Brown*, comes from this court's interpretation of R.C. 2945.72(E), a statutory provision stating that speedy-trial time is tolled for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." Despite acknowledging in *Brown* that the Speedy Trial Statute provides a defendant with the *right* to be brought to trial within a certain amount of time, *id*. at ¶ 14, and that the question before the court was one of first impression, *id*. at ¶ 22, this court's analysis in support of its holding that a defendant's request for discovery tolls speedy-trial time was limited to a single paragraph:

> Discovery requests by a defendant divert the attention of prosecutors from preparing their case for trial, thus necessitating delay. If no tolling is permitted, a defendant could attempt to cause

12

a speedy-trial violation by filing discovery requests just before trial. Courts could grant case-by-case exceptions but would then be in the unenviable position of deciding how close to trial is too close to request additional discovery. Further, prosecutors could be forced to make hurried responses to discovery requests to avoid violating the speedy-trial statute. We conclude that allowing a defendant's discovery requests to toll the running of the speedy-trial period is the most sensible interpretation of R.C. 2945.72(E).

*Id*. at ¶ 23.

**{¶ 35}** There is an argument to be made that *Brown* was wrongly decided. Although " '[t]here is no general constitutional right to discovery in a criminal case,' " *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 120, quoting *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), a defendant does have a due-process right to be provided with certain evidence by the prosecutor, *see Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"). Additionally, Crim.R. 16 provides the defendant and the state the right to reciprocal discovery. The purpose of Crim.R. 16 is, among other things, "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts" and "to protect the integrity of the justice system and the rights of defendants." Crim.R. 16(A). The right to reciprocal discovery under Crim.R. 16 is triggered by the defendant's request for discovery from the prosecution, and "[o]nce discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures." *Id*. What Crim.R. 16 thus recognizes—as does *Brady*, albeit to a more limited extent— is that a defendant's access to discovery is fundamental to the fairness of a criminal

trial and the integrity of the criminal-justice system. *See* Crim.R. 16(A); *Brady* at 87.

{¶ 36} This court's holding in *Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, at ¶ 23—that a demand for discovery under Crim.R. 16 constitutes a "period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused" under R.C. 2945.72(E)—is a stretch given Crim.R. 16's and *Brady*'s recognition that a criminal defendant has the right to the discovery of information in the prosecution's possession and given that the way to exercise this right is by asking for that information. Viewed in its proper light, the time the prosecution spends responding to a defendant's request for discovery can hardly be considered a period of delay "necessitated" by the accused; rather, it appears to be one necessitated by the criminal prosecution itself. *See State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 18, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987) (" 'The overall purpose [of criminal discovery rules] is to produce a fair trial' ").

{¶ 37} This court's rationale for its holding in *Brown* fails to hold up in other ways as well, some of which were explained by Judge William Hoffman in his concurring opinion in *State v. Cook*, 5th Dist. Licking No. 03-CA-0019, 2003-Ohio-5589. In that case, Judge Hoffman agreed with the majority's resolution of the case based on *Brown*'s holding that a demand for discovery tolls speedy-trial time; he nevertheless urged this court to reconsider its decision in *Brown*. Judge Hoffman explained:

> Crim.R. 16 distinguishes requests for discovery from motions for discovery. A request for discovery does not involve any intervention by the court and does not necessitate delay on the part of the court in the scheduling of the trial. I concede a request for discovery may necessitate delay by diverting the attention of

prosecutors from preparing their case for trial. I say "may" because preparing a discovery response seems to be an integral part [of the] process of preparing for trial and often times requires only a minimal amount of time and effort. My experience is in many cases the discovery response is prepared by administrative staff and only reviewed by the prosecutor for approval and signature. The delay necessitated by the response is often minimal, if any. If the prosecution felt the time spent preparing its discovery response hampered its ability to prepare for trial, it could move to continue the trial and any time during such continuances would be tolled under R.C. 2945.72(H).

I find the Supreme Court's concern over the timing of the discovery request most significant. Any last minute attempt by a defendant to cause a speedy trial violation by filing discovery requests just before trial is prohibited by Crim.R. 16(F).[3] The rule provides a defendant must make his motion for discovery within twenty-one days after arraignment or seven days before the date of trial, whichever is earlier, or at such reasonable time later as the court may permit. Because a motion for discovery must be preceded by a demand [request] for discovery, it is axiomatic a defendant's request for discovery must be made, at the latest, seven days before trial. If made thereafter, the request would be untimely and not require continuance of an otherwise timely scheduled trial. If the defendant is unprepared to proceed to trial without discovery after having timely requested it, the defendant would then move the trial court to compel discovery and/or continue the case. In such a

---

3. Crim.R. 16 was revised in 2010. *See* 125 Ohio St.3d LXXXV, XC. The language of former Crim.R. 16(F), *see* 34 Ohio St.2d xix, lvii, is now reflected in Crim.R. 16(M).

scenario, the speedy trial limit would be tolled by the defendant's motion and not his mere request for discovery.

By tolling the time period between the discovery request and response, there is no incentive for the prosecutor to promptly respond to the request. The prosecution could deliberately choose to delay its discovery response forcing the accused to file a motion for discovery and to secure a court order compelling the prosecution to provide it. If a defendant is in jail, such delay could provide a tactic to induce a plea. The end result is a defendant is forced to give up a portion of his or her statutory right to a speedy trial if the defendant chooses to exercise his or her right to discovery under Crim.R. 16. The defendant should not be forced to surrender one right to enforce another.

(Footnote added and second brackets sic.) *Id.* at ¶ 14-16 (Hoffman, J., concurring in judgment only).

**{¶ 38}** Additionally, the language contained in R.C. 2945.72(E)—that the speedy-trial period is tolled by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused"—indicates that the period is meant to be tolled only when formal legal activity is undertaken by the defendant that requires a trial court's ruling or attention. For instance, pleas in bar or abatement must be raised by the defendant in a pretrial motion that is filed with the trial court, *see* Crim.R. 12(C),[4] and the trial court has an obligation to decide the matter, *see* Crim.R. 12(F). *See also* R.C.

---

4. In *State v. Dukles*, 9th Dist. Medina No. 12CA0100-M, 2013-Ohio-5263, ¶ 9, the Ninth District Court of Appeals explained that following the adoption of Crim.R. 11(A)—which limits pleas that a criminal defendant may enter to not guilty, not guilty by reason of insanity, guilty, or no contest— pleas in bar or abatement are no longer raised as a "plea" to the charges but instead are raised as either a defense or objection to the charges in a pretrial motion to dismiss.

2943.06 (plea in bar); R.C. 2941.55 (plea in abatement). Similarly, R.C. 2945.72(E)'s reference to a "motion," "proceeding," or "action" suggests some formal court filing or request made by the defendant that requires a court's time and attention to resolve. But a defendant's request for discovery pursuant to Crim.R. 16 does not require the trial court to take any action. *See Papadelis*, 32 Ohio St.3d at 3, 511 N.E.2d 1138 ("Crim.R. 16 contemplates an informal step— that being the demand or written request for discovery of one party upon another party. It does not require court intervention"). Under the rule, once the defendant requests discovery from the prosecution, the prosecution has an obligation to provide that discovery to the defendant or otherwise notify the court why the information is being withheld. *See* Crim.R. 16(A), (B), and (E). While the defendant may file a motion with the court to compel compliance with the rule if he or she believes that the prosecution is wrongfully withholding or delaying its disclosures, the rule does not require the defendant to file a motion to compel as a matter of course. *See Papadelis* at 3-4; *see also* Crim.R. 16(M). Thus, it seems unlikely that the legislature intended to include a defendant's request for discovery within the parameters of R.C. 2945.72(E) when, unlike a request for discovery, all other tolling events specifically listed in the statute require court intervention.

{¶ 39} Lastly, the holding in *Brown* undermines some of the goals of the Speedy Trial Statute. Without questioning its soundness, the majority opinion repeats and reaffirms the statement made in *Brown* that the purpose behind the Speedy Trial Statute is " ' "to prevent inexcusable delays caused by indolence within the [criminal] judicial system." ' " Majority opinion, ¶ 19, quoting *Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, at ¶ 24, quoting *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). But *Ladd*, the original source for this statement, fails to provide any citation to authority. *See id*. at 200. This renders the original declaration in *Ladd* suspect, as well as this court's continued reliance on it. But even if Ohio's Speedy Trial Statute does exist to prevent inexcusable

delays and indolence, it is clear from the statute's language that this is not the *only* reason it exists. Under the Speedy Trial Statute, a person accused of committing a felony can be discharged if not brought to trial within 270 days after arrest. *See* R.C. 2945.71(C)(2) and 2945.73(B). An accused is given triple credit, however, for the days during that interim that he is held in jail on the pending charge. R.C. 2945.71(E). The drastic distinction in speedy-trial time calculations between those held in jail and those released on bond makes clear that the General Assembly intended that the statutory speedy-trial provisions do more than just discourage indolence in the criminal-justice system—the legislature also wanted to discourage and prevent lengthy pretrial detention of people presumed to be innocent under the law. In other words, the statute appears to exist, at least in part, to promote and uphold the presumption of innocence with the understanding that a person should not be punished until proven guilty. This court's decision in *Brown* ignores and undercuts this aspect of the Speedy Trial Statute.

{¶ 40} The holding in *Brown* is undoubtedly based on tenuous reasoning. However, the principal ground for suggesting that this court revisit the holding is more or less a practical one: it will save time and resources. In the two decades since *Brown* was decided, there has been a proliferation in litigation over whether a defendant is entitled to have the charges against him or her dismissed based on statutory speedy-trial rights. This is likely because defendants have no clear way of knowing how much time has been tolled. This of course results in trial courts and appellate courts spending significant time and attention reviewing questions about what amount of time constitutes a reasonable delay under the circumstances; it also opens the door for additional, more difficult questions, like the one that remains unanswered by the majority here—whether supplemental discovery disclosures toll speedy-trial time, *see* majority opinion at ¶ 26.

**The triple-count provision is not intended to benefit the state**

{¶ 41} Moving past my concerns with *Brown*, I do not agree with the majority's insinuation that R.C. 2945.71(E)'s triple-count provision can render the prosecution's delay more or less reasonable. Regarding this issue, the majority states:

> Two hundred eighty-three days of speedy-trial time elapsed while Belville awaited trial, without accounting for tolled time. To avoid a speedy-trial violation, the state needed to establish that 13 days were tolled. Because Belville was in jail when he made his discovery request, each day was triple-counted. Thus, the state needed only to show that five of these triple-counted days were tolled. Given the difficulty of copying the DVR footage, the state could not reasonably have been expected to deliver a copy of the DVR footage within the five triple-counted days that followed Belville's request.

(Footnote omitted.) Majority opinion at ¶ 25.

{¶ 42} As explained above, the triple-count provision in R.C. 2945.71(E) exists to ensure that the accused, who is innocent until proven guilty, is not subjected to lengthy pretrial incarceration. The triple-count provision recognizes that pretrial deprivation of liberty comes with certain costs to the defendant that can be mitigated by bringing the defendant to trial sooner rather than later. There is nothing in the Speedy Trial Statute that suggests that R.C. 2945.71(E)'s triple-count provision should benefit the state by permitting a court to discount the length of the state's delay in a three-to-one fashion as the majority suggests here, or that the length of the state's delay is made more or less reasonable by the fact that the state had only 90 days, instead of 270, to bring the defendant to trial.

## Conclusion

**{¶ 43}** Although I agree with the majority that this court's decision in *Brown* is controlling on these facts, I question whether *Brown* was correctly decided. This court should revisit its holding in *Brown* if the question is properly raised in the future. Additionally, I do not agree with the majority that R.C. 2945.71(E)'s triple-count provision should benefit the prosecution when determining whether the length of the prosecution's delay in responding to a discovery request was reasonable. For these reasons, I concur in judgment only.

—————————

Brigham M. Anderson, Lawrence County Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Addison M. Spriggs, Assistant Public Defender, for appellant.

Steven L. Taylor, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Raymond T. Faller, Hamilton County Public Defender, and Krista M. Gieske, Assistant Public Defender; Cullen Sweeney, Cuyahoga County Public Defender; and Russell S. Bensing, urging reversal for amici curiae Hamilton County Public Defender, Cuyahoga County Public Defender, and Ohio Association of Criminal Defense Lawyers.

—————————