[Cite as *State v. Matthews*, 2024-Ohio-5558.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MAURICE R. MATTHEWS,

    DEFENDANT-APPELLANT.

CASE NO. 14-24-19

O P I N I O N

Appeal from Union County Common Pleas Court
Trial Court No. 2022-CR-0192

**Judgment Affirmed**

Date of Decision:  November 25, 2024

APPEARANCES:

    *Mary Catherine Corrigan* **for Appellant**

    *Samantha M. Hobbs* **and** *Raymond Kelly Hamilton* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Maurice R. Matthews ("Matthews") appeals the judgment of the Union County Court of Common Pleas, arguing that the trial court erred in denying the motion to dismiss he made pursuant to R.C. 2941.401; that he was denied his right to the effective assistance of counsel; and that his conviction for burglary is not supported by sufficient evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On August 22, 2022 at roughly 3:00 P.M., Matthews entered the Kay Jewelers in Marysville, Ohio and spoke with the store manager, Sarah Willie ("Willie"). After examining several items for around thirty to forty-five minutes, Matthews indicated that he had to leave to pick up his girlfriend at Walgreen's but intended to return to Kay Jewelers later that day. At his request, several items were placed on hold for him.

{¶3} At around 7:00 P.M., Willie and another employee, Tina Spurlock ("Spurlock") locked the front door and closed the store. Shortly thereafter, Matthews knocked at the front door. Willie testified that she heard him say, "you guys are closed, man, I really wanted to * * * buy that." (Tr. 173). In response,

Willie unlocked the front door and let him inside. She explained that she could still make a sale because the register had not yet been closed out for the day.

**{¶4}** Spurlock went towards the back of the store while Willie and Matthews went to one of the display cases. Matthews told Willie that he was no longer interested in the pieces they had looked at earlier because these items were fitted with lab-created stones. He then expressed interest in a diamond necklace that was $7,999.99. As Willie was getting this piece out of the display case, Matthews "yanked on the chain" and "grabbed" it from her. (Tr. 182). He then ran out of the store with the necklace.

**{¶5}** Spurlock then called 9-1-1 and reported that a "grab-and-run" had occurred. (Ex. 2). In response, the police were dispatched to the Kay Jewelers and conducted interviews with Willie and Spurlock. After examining the security camera footage, the police were able to identify Matthews. During the investigation, Detective Dennis Flanagan ("Detective Flanagan") discovered that Matthews had been involved in several other theft offenses at other retail stores.

**{¶6}** On September 2, 2022, Matthews was indicted on one count of burglary in violation of R.C. 2911.12(A)(1), a second-degree felony, and one count of grand theft in violation of R.C. 2913.02(A)(1), a fourth-degree felony. On August 18, 2023, Matthews filed a motion to dismiss the indictment on speedy-trial grounds that the trial court subsequently denied. On September 25, 2023, Matthews filed a

supplemental motion to dismiss on speedy-trial grounds. However, the trial court denied the motion after concluding that the speedy-trial time allotted under R.C. 2941.401 had not expired.

{¶7} On September 14, 2023, the prosecution filed notice of intent to use other acts evidence to establish a *modus operandi* under Evid.R. 404(B). These other acts included several other incidents in which Matthews committed grab-and-runs at various stores affiliated with Kay Jewelers. After a hearing on this matter, the trial court found the State's motion well-taken.

{¶8} On October 2, 2023, Matthews's jury trial commenced. Willie and Spurlock testified about the incident in Marysville. The State then called a loss prevention manager at Signet Jewelers, Brian Finnicum ("Finnicum"), to describe nine other incidents in which Matthews committed grab-and-runs at various stores affiliated with Kay Jewelers. A store manager at a Kay Jewelers in Akron, Jill Ernest ("Ernest"), also testified about a grab-and-run she witnessed Matthews commit at her store on July 14, 2022. On October 3, 2023, the jury returned verdicts of guilty on both charges against Matthews.

{¶9} The trial court issued its judgment entry of sentencing on February 1, 2024. Matthews filed his notice of appeal on February 15, 2024. On appeal, he raises the following four assignments of error:

**First Assignment of Error**

**The trial court erred by denying the Appellant's motion to dismiss pursuant to ORC 2941.401.**

**Second Assignment of Error**

**Trial counsel was ineffective for filing a discovery and bill of particulars demand 143 days after the appellant's notice of place of imprisonment and request for disposition of indictment, information or complaint was filed.**

**Third Assignment of Error**

**Trial counsel was ineffective for failing to move to strike mention of unrelated robbery charges.**

**Fourth Assignment of Error**

**The conviction for count one was against the sufficiency of the evidence.**

We are going to consider the first and fourth assignments of error before proceeding to the second and third assignments of error.

*First Assignment of Error*

{¶10} Matthews argues that the trial court erred in denying his motions to dismiss the charges against him on speedy-trial grounds.

Standard of Review

{¶11} A trial court's decision on a motion to dismiss for a speedy-trial violation presents mixed questions of fact and law. *State v. Flynn*, 2017-Ohio-1484, ¶ 10 (3d Dist.). For this reason, an appellate court "must give due deference to the

trial court's findings of fact if they are supported by competent, credible evidence but will independently review whether the trial court correctly applied the law to the facts of the case." *State v. Shaffer*, 2022-Ohio-421, ¶ 10 (3d Dist.), quoting *State v. Hansen*, 2013-Ohio-1735, ¶ 20 (3d Dist.).

### Legal Standard

**{¶12}** Ohio's general speedy-trial statute is set forth in R.C. 2945.71, *et seq*., and, where applicable, requires a defendant charged with a felony to be brought to trial within two hundred seventy (270) days of his or her arrest. R.C. 2945.71(C)(2). The statutorily allotted period of speedy-trial time may be extended by the tolling events listed in R.C. 2945.72. *State v. Cartlidge*, 2020-Ohio-3615, ¶ 52 (3d Dist.). "The occurrence of a tolling event does 'not unconditionally extend the time limit in which an accused must be brought to trial' but only extends the time limit for the length of the delay' occasioned by tolling event. *State v. Sessom*, 2024-Ohio-130, ¶ 7 (3d Dist.), quoting *State v. Arrizola*, 79 Ohio App.3d 72, 75 (3d Dist. 1992).

**{¶13}** However, R.C. 2941.401 contains "a 'specific' speedy-trial statute applicable only to defendants who are imprisoned in correctional institutions in the State of Ohio and facing charges for crimes separate from those for which they are already imprisoned." *State v. Irish*, 2019-Ohio-2765, ¶ 13 (3d Dist.). This provision reads, in its relevant part, as follows:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance

of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, the prisoner shall be brought to trial within one hundred eighty days after the prisoner causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of the prisoner's imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or the prisoner's counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

\* \* \*

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

R.C. 2941.401. "[W]hen a person who is imprisoned in an Ohio correctional institution is charged with a crime separate from the crime for which they are imprisoned, R.C. 2941.401 applies to the exclusion of R.C. 2945.71." *Irish* at ¶ 17.

**{¶14}** Under R.C. 2941.401, the statutory speedy-trial time "will not begin to run until the defendant files a request for disposition in accordance with R.C. 2941.401." *Irish* at ¶ 17. Once this protection is triggered, the tolling provisions in R.C. 2945.72 govern the calculation of the speedy-trial time that accrues against the period of one hundred eighty (180) days that is allotted under R.C. 2941.401. *State*

*v. Smith*, 140 Ohio App.3d 81, fn. 1 (3d Dist. 2000). *See also State v. Austin*, 2019-Ohio-686, ¶ 46 (5th Dist.); *State v. Jama*, 2024-Ohio-2657, ¶ 12 (6th Dist.).

**{¶15}** "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable time limits." *State v. Sanchez*, 2006-Ohio-4478, ¶ 8.

> The computation of time for criminal statutes is governed by Crim.R. 45, which provides, '[i]n computing any period of time prescribed * * * by any applicable statute, the date of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included * * *.'

*State v. Shafer*, 2015-Ohio-2469, ¶ 12 (3d Dist.), quoting Crim.R. 45. "If any ambiguity exists," the reviewing court is to "construe the record in favor of the accused." *Shafer* at ¶ 12.

Legal Analysis

**{¶16}** On February 6, 2023, Matthews filed the notice required by R.C. 2941.401 and triggered the 180-day time limit. On June 29, 2023, defense counsel filed a motion for discovery and a bill of particulars. "A defendant's 'demand for discovery or a bill of particulars is a tolling event * * *.'" *Sessom*, 2024-Ohio-130, ¶ 12, quoting *State v. Brown*, 2002-Ohio-7040, ¶ 26. Between February 6, 2023 and June 29, 2023, one hundred forty-three (143) days of speedy-trial time accrued.

**{¶17}** On August 11, 2023, the State filed a response to Matthews's demand for discovery. On August 18, 2023, Matthews filed a motion to dismiss on speedy-

trial grounds. The filing of a motion to dismiss constituted a tolling event. *See State v. Boyd*, 2023-Ohio-2079, ¶ 27 (2d Dist.); *State v. Parker*, 2020-Ohio-4607, ¶ 85 (6th Dist.); *State v. Walker*, 2013-Ohio-3522, ¶ 27 (8th Dist.); *State v. Squillace*, 2016-Ohio-1038, ¶ 16 (10th Dist.). Between August 11, 2023 and August 18, 2023, seven days of speedy-trial time accrued, bringing the total amount of speedy-trial time to one hundred fifty (150) days.

{¶18} On August 21, 2023, the trial court denied the motion to dismiss. However, at the hearing on the motion to dismiss, defense counsel requested a further pretrial hearing. *State v. Michailides*, 2018-Ohio-2399, ¶ 14 (8th Dist.); *State v. Ervin*, 2021-Ohio-47, ¶ 4, 33 (4th Dist.). For this reason, the date of the trial was continued at the Defense's request, and the ruling on the motion to dismiss did not cause the speedy-trial time to begin running. At the final pretrial hearing on September 19, 2023, the parties scheduled the trial for October 2, 2023. In between August 19, 2023 and September 19, 2023, zero (0) days of speedy-trial time accrued, leaving the total amount of speedy-trial time at one hundred fifty (150) days.

{¶19} On September 25, 2023, Matthews filed another motion to dismiss on speedy-trial grounds. *State v. Carr*, 2013-Ohio-5312, ¶ 27 (4th Dist.); *State v. Danzy*, 2021-Ohio-1483, ¶ 46 (8th Dist.). In between September 19, 2023 and September 25, 2023, six (6) days of speedy-trial time accrued, bringing the total amount of speedy-trial time to one hundred fifty-six (156) days.

{¶20} On September 29, 2023, the trial court denied Matthews's motion to dismiss. On October 2, 2023, the jury trial on the charges against Matthews commenced. Between September 29, 2023 and October 2, 2023, three (3) days of speedy trial time accrued, bringing the total amount of time to one hundred fifty-nine (159) days.[1] Thus, Matthews was brought to trial within the amount of time allotted under R.C. 2941.401.

{¶21} In response to these calculations, Matthews asserts that the State took an unreasonable amount of time to respond to his discovery request. For this reason, he argues that the accrual of speedy-trial time should not have been tolled for the entire forty-three (43) day period that elapsed between his request for discovery and the State's response.

> A discovery request tolls speedy-trial time for a reasonable amount of time necessary to allow the state to respond to the request. What is reasonable will necessarily be a case-by-case determination and depend on the totality of the circumstances.

*State v. Belville*, 2022-Ohio-3879, ¶ 21. We note that the Ohio Supreme Court recently found that a forty-three (43) day delay between the Defense's discovery request and the State's response was not unreasonable. *Id*. at ¶ 14, 23. In the case presently before us, we find no indication that this response time was unreasonable

---

[1] The State filed a discovery request on August 11, 2023 and points out that the Defense never responded. On appeal, the State argues that the accrual of speedy trial time should have tolled indefinitely after the Defense failed to respond to this discovery request after thirty days. Appellant's Brief, 4, citing *State v. Palmer*, 2007-Ohio-374, ¶ 24. However, the record indicates that Matthews was brought to trial within the statutorily allotted timeframe without accounting for this alleged delay, so we need not—and do not—consider this argument on appeal.

given that the State was in the process of collecting other acts evidence related to nine other grab-and-runs committed by Matthews.

**{¶22}** Further, courts have routinely allowed the State thirty days to respond to a discovery request from the Defense. *State v. Perdew*, 2021-Ohio-3075, ¶ 53 (4th Dist.); *State v. Crawford*, 2019-Ohio-2660, ¶ 30 (6th Dist.); *State v. Savors*, 2022-Ohio-894, ¶ 22 (7th Dist.); *Walker*, 2013-Ohio-3522, at ¶ 15. Thus, even if we did find that the forty-three (43) day period was unreasonable in this case and reduced the amount of time that was tolled by Matthews's discovery request to thirty (30) days, only one hundred seventy-two (172) days of speedy-trial time would have accrued in this case. *See Belville* at ¶ 25. For these reasons, we conclude that the trial court did not err in denying Matthews's motion to dismiss on speedy-trial grounds. Accordingly, the first assignment of error is overruled.

### *Fourth Assignment of Error*

**{¶23}** Matthews argues that his conviction for burglary is not supported by sufficient evidence.

### Legal Standard

**{¶24}** A sufficiency-of-the-evidence challenge asserts that the State failed to carry its burden of production at trial. *State v. Richey*, 2021-Ohio-1461, ¶ 16 (3d Dist.). On review, an appellate court is not to consider whether the evidence presented at trial should be believed but whether the evidence, if believed, could

provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged. *State v. Smith*, 2023-Ohio-3015, ¶ 19 (3d Dist.). Accordingly, the applicable standard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *State v. Plott*, 2017-Ohio-38, ¶ 62 (3d Dist.).

**{¶25}** Further, to establish a conviction for burglary in violation of R.C. 2911.12(A)(1), the State must prove that the defendant "by force, stealth, or deception * * * [t]respass[ed] in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense[.]" R.C. 2911.12(A)(1).

Legal Analysis

**{¶26}** In his first argument, Matthews asserts that the State did not present evidence that he entered the store with the intent to commit a criminal offense inside. However, the State called Ernest, Detective Robert Perkins ("Detective Perkins"), and Finnicum to testify about a distinct modus operandi that Matthews followed in nine grab-and-runs that he had previously committed in other jewelry stores. *See State v. Armstead*, 2021-Ohio-4000, ¶ 33 (1st Dist.) (other acts evidence may be introduced at trial if "the detailed facts of the charged and uncharged offenses

strongly suggest that an innocent explanation is implausible."), quoting 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed. 2019).

**{¶27}** Ernest testified that Matthews came into a Kay Jewelers location that she manages in Akron, Ohio on July 14, 2022. She testified that Matthews told a salesperson that he was looking for jewelry for his partner and looked at several expensive pieces for some time. When presented with two pieces of jewelry by the salesperson, Matthews grabbed both items from her hands and ran out of the store.

**{¶28}** Detective Perkins investigated the incident at Ernest's store and several other grab-and-runs committed by Matthews. He testified that Matthews engaged in the following modus operandi across these incidents:

> [H]e came into the stores. Real friendly. Talking to the workers. Started looking like I'm going to buy something for a couple hundred dollars for somebody and took 15-20 minutes. Got to, like, almost know the people and then, kind of, progressed up, well, I guess I'm going to spend this or this and progressed up to some higher priced items and then once he got to something he liked, I guess, or the level he liked snatched and ran.

(Tr. 217). Finnicum testified that he worked in loss prevention for Signet Jewelers and created business records that documented nine other grab-and-runs in which Matthews followed this modus operandi.

**{¶29}** The testimony from Willie indicates that Matthews followed this same pattern across the two visits he made to this store on the date of the theft. Willie testified that, during his first visit, Matthews was interested in purchasing some

affordable, laboratory-created jewelry for his daughter and discussed these items for roughly thirty minutes. When he returned later, he told Willie that the laboratory-created pieces they discussed earlier were "junk" and asked to see a necklace that was more expensive. (Tr. 181). Willie testified that, once she got this piece out of the display case, Matthews grabbed the $7,999.99 necklace from her hand and went out the front door.

{¶30} In summary, the State produced evidence that Matthews acted consistently with a distinct modus operandi that he had followed on other occasions. From this evidence, a jury could conclude that Matthews entered the Kay Jewelers store after closing with the intention of committing another grab-and-run, using the mode of operation established by the State. Thus, this first argument is without merit.

{¶31} Second, Matthews argues that the State did not present evidence that he used "force, stealth, or deception" to enter the store. R.C. 2911.12(A)(1). In response, the State argues that it produced evidence establishing that Matthews obtained entry into the store through deception. At trial, Willie testified that Matthews came into the store at roughly 3:00 P.M. and expressed interest in several items. On Matthews's request, Willie put these items on hold because he indicated that he had to leave to pick up his girlfriend and might "come back." (Tr. 170).

{¶32} Willie and Spurlock testified that, at 7:00 P.M., they closed the store by locking the front door. Willie stated that, shortly after closing, Matthews knocked on the front door and said through the glass, "Oh, man, you guys are closed. I can't buy that." (Tr. 192). She also testified that he said, "Man, I really wanted to buy that." (Tr. 174). Willie indicated that, since the register had not yet been closed out, she could still make a sale after closing pursuant to company policy and decided to let Matthews inside.

{¶33} Willie testified that, if she had not unlocked the door, Matthews "would not have been able to come in * * *." (Tr. 175). She then stated that she allowed Matthews into the store because she "was under the impression that he was wanting to purchase those pieces" that had been put on hold. (Tr. 175). She also explained that the company policy gives employees the discretion to let a customer in the store after closing "[a]s long as we have a register open * * * if they are, in fact, wanting to purchase something." (Tr. 191).

{¶34} Further, the State also introduced evidence of Matthews's modus operandi to establish that he entered the store with the intent to commit another grab-and-run. From this evidence, a finder of fact could infer that Matthews gained entry into the store by indicating that he wanted to purchase the jewelry that he had earlier put on hold when he had no such intention. Thus, the State produced evidence from which a jury could conclude that Matthews's authorization to enter the closed store

was gained through deception. *See State v. Dukes*, 2003-Ohio-2386, ¶ 23 (3d Dist.); *State v. Wright*, 2022-Ohio-1537, ¶ 119-120 (6th Dist.); *In re J.M.*, 2012-Ohio-5283, ¶ 17 (7th Dist.). We conclude that this second argument is without merit. Accordingly, the fourth assignment of error is overruled.

*Second Assignment of Error*

**{¶35}** Matthews argues that defense counsel was ineffective for filing requests for discovery and a bill of particulars in this case.

Legal Standard

**{¶36}** "Ohio law presumes that a licensed attorney's representation was competent." *State v. Morgan*, 2024-Ohio-625, ¶ 13 (3d Dist.). "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 2018-Ohio-3618, ¶ 24 (3d Dist.), quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

**{¶37}** To establish deficient performance, the appellant must demonstrate that defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 2017-Ohio-4349, ¶ 35 (3d Dist.), quoting *Strickland* at 687. In general, matters that fall within the ambit of trial strategy or debatable tactics, even if unsuccessful, do not constitute ineffective assistance of counsel. *State v. Wears*, 2023-Ohio-4363, ¶

32 (3d Dist.). To establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Bibbs*, 2016-Ohio-8396, ¶ 13 (3d Dist.).

Legal Analysis

**{¶38}** Matthews argues defense counsel was ineffective for filing requests for discovery and a bill of particulars that tolled the accrual of his speedy trial time and enabled the State to try these charges within the statutorily allotted timeframe. As an initial matter, decisions about whether to file requests for discovery or a bill of particulars fall within the realm of debatable tactics and will not generally constitute deficient performance. *State v. Winters*, 2022-Ohio-2061, ¶ 38 (2d Dist.); *State v. Rollison*, 2017-Ohio-8936, ¶ 15 (3d Dist.).

**{¶39}** Further, Matthews argues that he was prejudiced by the decision to file these requests because his speedy trial time would otherwise have expired, leading to the dismissal of the charges against him. However, this argument requires us to assume that the State and the trial court would not have taken any steps to ensure that Matthews was tried within the statutorily-allotted timeframe. *State v. Saultz*, 2011-Ohio-2018, ¶ 22 (4th Dist.); *State v. Hilliard*, 2006-Ohio-3918, ¶ 13 (9th Dist.); *State v. Neer*, 2020-Ohio-279, ¶ 5-9 (10th Dist.). Since this argument relies entirely on speculation, Matthews has failed to establish a reasonable probability

exists that the outcome of this proceeding would have been different in the absence of the identified requests. Accordingly, the second assignment of error is overruled.

*Third Assignment of Error*

**{¶40}** Matthews argues that defense counsel was ineffective for failing to move to strike a comment made during Detective Flanagan's testimony.

Legal Standard

**{¶41}** We reincorporate the legal standard for ineffective assistance of counsel claims as set forth under the second assignment of error.

Legal Analysis

**{¶42}** Matthews argues that defense counsel was ineffective for failing to move to strike a reference to an unrelated robbery charge against him that Detective Flanagan made during his testimony. On appeal, he identifies the following exchange as the basis of this argument:

> [Defense counsel:] Detective you indicated that you had matched the appearance of my client on other cases throughout Ohio. Is that correct?
>
> [Detective Flanagan:] That is correct.
>
> [Defense counsel:] And when you did that, what type of charges were in those cases?
>
> [Detective Flanagan:] Um, the information that I received on your client was from a report that was sent to me by Detective Perkins. Those cases dealt with, I believe, all of them were felony theft offenses related to retail incidents.

[Defense counsel:] So felony four's?

[Detective Flanagan:] Yes, sir.

[Defense counsel:] No—no felonies of the second degree. No felonies of the third degree?

[Detective Flanagan:] I don't recall coming across that. I believe there may have been through one department a robbery charge but I do not believe that was linked to any of the retail issues.

(Tr. 227). We note that the decision not to challenge isolated remarks is generally a matter of trial strategy because objecting or moving to strike to such testimony may only attract more attention to unfavorable evidence. *State v. Messenger*, 2021-Ohio-2044, ¶ 68 (10th Dist.). Given the context of this challenged remark, we conclude that Matthews had not established deficient performance.

**{¶43}** Further, the identified exchange also occurred just after the State had introduced some evidence of nine other grab-and-run thefts committed by Matthews to establish modus operandi pursuant to Evid.R. 404(B)(2). In addition to eyewitness testimony from Spurlock and Willie, the State also introduced security camera footage from Kay Jewelers that captured Matthews committing this offense. For these reasons, Matthews has not demonstrated the outcome of this proceeding would have been different in the absence of this isolated comment. Accordingly, the third assignment of error is overruled.

*Conclusion*

**{¶44}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Union County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK and MILLER, J.J., concur.**

**/hls**